[No. 27311. Department Two. December 22, 1938.]

HENRY K. DILLON et al., Respondents, v. L. S. BURNETT et al., Appellants.[1]

[1]Reported in 85 P. (2d) 656.

Binns & Cunningham, for appellants.

Hyland, Elvidge & Alvord, for respondents.

BEALS, J.—Henry K. and Helen Dillon sued L. S. and L. H. Burnett, demanding compensation for damages suffered by plaintiffs as the result of a collision between their automobile and one owned by defendant L. H. Burnett, which was being driven by his son, L. S. Burnett. Liability as for negligence was admitted by the son, the father denying that any responsibility on his part existed. The action was tried to the court, sitting without a jury, and resulted in the entry of findings of fact and conclusions of law in plaintiffs' favor, followed by the entry of judgment against both defendants. From this judgment, both defendants have appealed.

Appellant L. H. Burnett assigns error upon the failure to grant his motion to dismiss the action as to him. Both appellants assign error upon the allowance by the trial court of one item of damage, and both contend that the allowance in the sum of $7,500, which the trial court awarded as compensation for injuries suffered by respondent Henry K. Dillon, is excessive, and that the trial court erred in denying appellants' motion for a new trial, or in the alternative, in not reducing the amount of the award.

Appellants, father and son, live together, the father owning an automobile, which was used by the son. Late at night, November 17, 1937, appellant son was driving the automobile in an easterly direction along the highway between Olympia and Tacoma. The trial court found, and the finding is amply supported by the

evidence, that appellant L. S. Burnett was intoxicated, and was driving in an extremely careless and negligent manner; and that, as a result of his negligent driving, the car collided with respondents' car, which was being driven in a westerly direction by respondent Henry K. Dillon, his wife, respondent Helen Dillon, accompanying him. Both respondents were injured, respondent Henry K. Dillon much the more severely. Their car was ruined, and they suffered some other financial loss.

As above stated, only three questions are presented on this appeal.

 We shall first discuss the questions raised upon the contention of appellant L. H. Burnett that the court erred in denying his motion for dismissal of the case as to him. This appellant (who will hereinafter be referred to as appellant father) had been a widower for over twenty years, and occupied a dwelling in the city of Tacoma with his thirty-three year old son, appellant L. S. Burnett (who will hereinafter be referred to as appellant son). Appellant father, who did not himself drive, had purchased a car, and kept it in a garage at the home. The car was not used for any business purposes whatsoever, save that the son sometimes drove his father to and from their place of business, the father conducting a jewelry store, in which the son was employed. The son had permission to drive the car at any time, and on the evening of the accident, was driving it for his own pleasure. It is admitted that the son was living with the father as a member of his household.

Respondents contend that the family car doctrine applies, and that the car was purchased and maintained by the father for the use and pleasure of himself and his son.

In the case of *Birch v. Abercrombie,* 74 Wash. 486,

133 Pac. 1020, 50 L. R. A. (N. S.) 59, concerning a somewhat similar situation, we said:

"The fact that the agency was not a business agency, nor the service a remunerative service, has no bearing upon the question of liability. *McNeal v. McKain,* 33 Okl. 449, 126 Pac. 742. In running his vehicle, she was carrying out the general purpose for which he owned it and kept it. No other element is essential to invoke the rule *respondeat superior.* We think that the instruction which is criticized in the *Doran* case [*Doran v. Thomsen,* 76 N. J. L. 754, 71 Atl. 296, 131 Am. St. 677, 19 L. R. A. (N. S.) 335] is, in itself, a complete answer to the opinion. It declared the use of the machine for the purpose for which it was owned, by the person authorized by the owner to so use it, a use in the owner's business. It seems too plain for cavil that a father, who furnishes a vehicle for the customary conveyance of the members of his family, makes their conveyance by that vehicle his affair, that is, his business, and any one driving the vehicle for that purpose with his consent, express or implied, whether a member of his family or another, is his agent. The fact that only one member of the family was in the vehicle at the time is in no sound sense a differentiating circumstance abrogating the agency. It was within the general purpose of the ownership that any member of the family should use it, and the agency is present in the use of it by one as well as by all."

In the case cited, it was held that the parents were liable for an injury occasioned by the negligent operation of their automobile by their daughter, who was using the car for her own pleasure, and that the daughter was using the car as the agent of her parents.

The same rule was followed in the cases of *Guignon v. Campbell,* 80 Wash. 543, 141 Pac. 1031; *Allison v. Bartelt,* 121 Wash. 418, 209 Pac. 863; and *Hanson v. Eilers,* 164 Wash. 185, 2 P. (2d) 719.

In the later case of *Hart v. Hogan,* 173 Wash. 598, 24 P. (2d) 99, this court laid down the rule that

"One who furnishes an automobile for the use of his family is liable to a third person for injuries sustained as the result of the negligence of a member of the family in the operation of the automobile for such member's pleasure."

In the course of the opinion, we quoted 7-8 Huddy, Automobile Law (9th ed.), 320-326, § 125, as follows:

" 'The person upon whom it is sought to fasten liability under the "family car" doctrine must own, provide, or maintain an automobile for the general use, pleasure and convenience of the family. Liability under this doctrine is not confined to owner or driver. It depends upon control and use. A widow, wife or mother may be liable as well as a husband or father.

" 'In order to bring a case within this rule, it must be shown that the car was, in fact, a family pleasure car. But the mere fact that a car is purchased and used for business purposes does not prevent its coming within the "family car" doctrine, where it is also used for family pleasure. . . .

" 'The family group is not necessarily confined to persons related to the owner. It embraces all the members of the collective body of persons living in his household, for whose convenience the car is maintained and who have authority to use it.' "

The fact that appellant son was over twenty-one years of age is not important. He was living with the appellant father as a member of the latter's family, and used the automobile at will. Indeed, the son testified that, when the father wished the son to act as chauffeur for him, "if I happened to be in the mood and I happened to be around, I would any time, yes."

Appellant father strongly relies upon the case of *Warren v. Norguard,* 103 Wash. 284, 174 Pac. 7, in which it was held that parents were not liable for damages occasioned by their son's negligence in driving their automobile, when it appeared that their son, who was driving their car, was twenty-five years of age,

was engaged in his own pursuits, and had not lived in the family home for over six years; that at the time of the accident he held a position on a steamboat engaged in coastwise trade, and lived on the boat; that on the day of the accident, having returned from a cruise, he went to the family home, and in the absence of his parents, took the car from the garage and drove it for a while upon his own concerns. In the course of his tour, he met one of his younger brothers and, picking him up, started home. On his way, he injured the plaintiff in the action, who sued the parents. It was held that the son was not a member of his parents' family, and that they were not liable for his negligence.

The facts disclosed by the record in the case at bar clearly fall within the rule laid down in the case of *Birch v. Abercrombie, supra,* and the other cases following that doctrine, hereinabove cited. Appellant father maintained the automobile for the joint convenience and pleasure of himself and appellant son. The son was a member of the father's family, and the father is liable for the negligent act of the son, which resulted in damage to respondents. The court did not err in denying the motion of appellant father for a dismissal of the action as to him.

The following cases from other jurisdictions are in point upon this phase of the case, and support the conclusion which we have reached: *Hubert v. Harpe,* 181 Ga. 168, 182 S. E. 167, 183 S. E. 98; *Pearson v. Northland Transportation Co.,* 184 Minn. 560, 239 N. W. 602; *Watson v. Burley,* 105 W. Va. 416, 143 S. E. 95, 64 A. L. R. 839; *Plasch v. Fass,* 144 Minn. 44, 174 N. W. 438, 10 A. L. R. 1446.

As the result of the collision, respondents' automobile caught fire and was reduced to junk. Some notes and memoranda made by respondent Henry K. Dillon while attending a course of lectures in Cali-

fornia about a year before the accident, and which were used by respondent in the course of his work as a salesman, were destroyed. Appellants state that the court placed a value of $125 upon these papers and allowed respondents recovery in that amount. Appellants contend that no recovery should have been allowed for this item; and that, while the possession of the memoranda might have been convenient to respondent, the loss thereof is not one which can be compensated in damages. Appellants also contend that the loss, if any, was suffered by Mr. Dillon's employer, and not by him.

The papers undoubtedly had a value to respondent. They could not be replaced unless the respondent should again attend the course of lectures, which he could not do without expense. The findings do not show any specific allowance for loss of these papers, the court having lumped together the amount allowed for loss of personal property destroyed by the fire. Respondents were entitled to recover for this item of damage, and if the court did fix their damages in this connection at not over $125, we conclude that such an allowance is supported by the evidence.

■ The trial court awarded respondents judgment for $7,500, as compensation for injuries suffered by respondent Henry K. Dillon. Appellants argue that this award is so excessive that this court should direct that respondents accept a substantial reduction thereof, or stand a new trial. Mr. Dillon, at the time of the accident, was thirty-five years of age, and for some time had been manager of the Associated Oil Company, at Olympia. He regularly participated in athletic exercises and was extremely active. He suffered injuries to his back, and at the time of the trial was compelled to wear a Taylor belt. He testified that for a while he had discarded this belt, but was compelled by pain to resume it. He testified that his business required him

to drive an automobile a good deal, and that he suffered physical inconvenience as the result of driving a car.

The physician who treated Mr. Dillon testified at length as to the nature of his injuries, stating that Mr. Dillon would always suffer some disability as a result of the accident; that his back would never be as strong as it was before; and that, during the remainder of his life, he would be compelled to reduce his activities to conform with the condition of his back. The doctor also testified that it was reasonably probable that Mr. Dillon would suffer from arthritis, which would begin at the point on his back where his spine was injured.

Another physician examined Mr. Dillon and took X-rays of his back, testifying that, in his opinion, the pictures showed a slight crack in the rami of the fifth lumbar vertebra. This witness testified that the X-rays would not show damage to the tissues, but that such damage necessarily followed in the condition disclosed by the X-rays. He also testified that Mr. Dillon would always suffer some disability about the lumbo-sacral angle, and that "all of his life he is going to hear from that back on occasions."

Another physician who had examined Mr. Dillon was called as a witness on the part of appellants, and testified that, in his opinion, Mr. Dillon had suffered a low back sprain. Asked his opinion as to the permanent nature of the injuries, the witness answered:

"Well, I couldn't tell you that. Some of these low back sprains, in my experience, get along well, and others have a tendency to be chronic and bother them more or less."

Again, in response to a question as to what would be the probabilities of Mr. Dillon's recovery, the witness answered:

"Well, I would think he would recover; but, as I say, these back—low back sprains tend to become chronic; it bothers them some."

The trial court found that Mr. Dillon suffered two fractures of the lumbar vertebrae at the junction of the fourth and fifth vertebrae, together with other serious injuries; that the injuries are permanent; and that Mr. Dillon will have a weak back for the remainder of his life, will be required to wear a brace or belt for an indefinite period, and will be unable to indulge in physical exercise or effort without danger of further injury.

Appellants argue that the testimony does not support the court's finding that Mr. Dillon's injuries are permanent; and that, in any event, the allowance is excessive. Appellants cite many cases, several in which this court held that awards were too large, and that, if the plaintiffs did not accept reduced amounts, new trials should be granted. We are of the opinion that the record supports the court's finding that Mr. Dillon's injuries are permanent, and we are convinced that the award of which appellants complain is not so excessive as to require this court to direct either the acceptance of a lesser amount by respondents or the granting of a new trial.

Finding no error in the record, the judgment appealed from is affirmed.

STEINERT, C. J., ROBINSON, GERAGHTY, and SIMPSON, JJ., concur.