[No. 34346.   Department Two.   February 20, 1958.]

ALEXANDER SMITH, *Appellant*, v. EUGENE D. LAUGHLIN *et al.,
Respondents.*[1]

[1]Reported in 321 P. (2d) 907.

*Zundel, Merges, Brain & Isaac* and *Thomas J. Isaac,* for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *John C. Patterson,* for respondents.

DONWORTH, J.—This action arises out of an automobile collision which occurred on February 2, 1956, about 11:15 p. m., at an uncontrolled street intersection in the city of Seattle. The case was tried before the court, sitting with a jury, which returned a verdict in favor of plaintiff for $710.66. The court granted defendant's motion for judgment n.o.v. and dismissed the action. Plaintiff appeals.

For brevity, Eugene D. Laughlin will hereinafter be referred to as if he were the sole respondent.

East Jefferson street intersects Thirtieth avenue at right angles. The paved portion of each street is approximately thirty-three feet wide.

Respondent, the favored driver, was proceeding eastward on east Jefferson street. Appellant was driving southbound on Thirtieth avenue. Each driver was alone. The night was clear; visibility unimpaired. The blacktop pavement on each street was dry. As each driver approached the intersection, he proceeded up a gradual incline which flattens out at the intersection.

The vehicles collided near the center of the intersection, the greater portion of appellant's car being in respondent's lane of travel. The front of respondent's car made contact with the right side (front door and fender) of appellant's vehicle.

As a result of the collision, appellant sustained personal injuries. He commenced this suit to recover damages therefor and for the loss of his automobile. Appellant contended that respondent was driving at an excessive rate of speed,

and failed to maintain a proper lookout or keep his car under sufficient control to avoid striking appellant.

The first assignment of error is that the trial court erred in granting respondent's motion for judgment n.o.v. In passing upon this contention, we must consider the evidence which is most favorable to appellant and give him the benefit of all inferences that can reasonably be drawn therefrom. Thus viewed, the testimony shows that appellant's speed immediately before the impact was from ten to fifteen miles per hour; that, upon approaching the intersection, he looked to the right, but did not see respondent's car or its headlights (although he did see the next westerly intersection); that he did not apply, nor attempt to apply, his brakes.

The only evidence of excessive speed on respondent's part consisted of the testimony of a police officer who had seen respondent's car four to five blocks away from the intersection at which the collision occurred and estimated its speed at that point to be from forty to forty-five miles per hour. Just prior to the collision, respondent had applied his brakes. His skid marks measured thirty-five feet. Another police officer, who investigated the accident, testified that the length of the skid marks would indicate a speed of at least twenty miles per hour. However, the skid marks, together with evidence of the force of the impact, were the only factors tending to prove excessive speed of respondent's vehicle at the point of impact.

Concerning his range of observation to the right as he approached east Jefferson street, appellant, on cross-examination, testified, in part, as follows:

"Q. At the corner of the intersection that lay between your car and that of Mr. Laughlin [respondent], there is a vacant lot, is there not? A. That is right. Q. And there is a bank that starts right up from the corner of the sidewalk, and then there is bushes and so forth? A. Yes. Q. That cuts the view there down quite a bit, doesn't it? A. If you are far enough back, yes. Q. You have to get practically up to the corner on both streets to be able to see very well? A. Yes."

An automobile was parked along the west curb of Thirtieth avenue, approximately the distance of one car length north of the northwest corner. Its presence reduced the distance away from the intersection from which a southbound motorist [appellant] could obtain an unobstructed view to the west along east Jefferson.

In answer to a special interrogatory (returned with their verdict), the jury found that respondent's automobile headlights were on at the time of the collision. This factor eliminated the element of deception from the case and left appellant in the untenable position of saying that he looked to his right (along east Jefferson street) and failed to see respondent's car when it was obviously within his range of vision with its lights burning. Appellant, therefore, is in the same situation as if he had looked and had seen respondent's car approaching the intersection. *Roberts v. Leahy*, 35 Wn. (2d) 648, 651, 214 P. (2d) 673 (1950), in which many cases are cited.

The factual situation thus presented is controlled by the application of Laws of 1955, chapter 146, § 3, p. 645 (RCW 46.60.150), which provides:

"Every operator of a vehicle on approaching public highway intersections shall look out for and give right of way to vehicles on his right, simultaneously approaching a given point within the intersection, and whether his vehicle first reaches and enters the intersection or not: *Provided,* That this section shall not apply to operators on arterial highways or to vehicles entering an intersection which is posted with the 'Yield Right of Way' sign."

That section, except for the proviso contained therein, is, in substance, a re-enactment of Laws of 1937, chapter 189, § 88, p. 899 (Rem. Rev. Stat., § 6360-88), which in turn substantially re-enacted Laws of 1927, chapter 309, § 41 (14), p. 806 (Rem. Supp. 1927, § 6362-41, subd. 14) with insignificant changes in form. In its 1927 form, that rule of the road was interpreted by this court in *Martin v. Hadenfeldt*, 157 Wash. 563, 567, 289 Pac. 533 (1930).

We there formulated the following rules relating to the application of that statute:

"(1) All rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers.

"(2) The primary duty of avoiding such accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times.

"(3) If two cars collide within the intersection, then they were simultaneously approaching a given point within the intersection, within the meaning of the statute, unless—

"(4) The driver on the left assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no [sic] the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

With reference to the fourth rule of the *Hadenfeldt* case, *supra,* we said, in *Hauswirth v. Pom-Arleau,* 11 Wn. (2d) 354, 119 P. (2d) 674 (1941):

"The exception referred to in the *Hadenfeldt* case, *supra,* presupposes a situation where the disfavored driver sees or has the opportunity of observing the favored vehicle and is deceived by the actions of the driver of that vehicle. *Bowen v. Odland,* 200 Wash. 257, 93 P. (2d) 366; *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371; *Jamieson v. Taylor,* 1 Wn. (2d) 217, 95 P. (2d) 791."

In the present case, appellant cannot successfully assert that he was deceived by the actions of respondent, because one is not deceived by that which one does not see. *Shultes v. Halpin,* 33 Wn. (2d) 294, 205 P. (2d) 1201 (1949), and cases cited; *Sebastian v. Rayment,* 42 Wn. (2d) 108, 254 P. (2d) 456 (1953). Hence appellant cannot be held to come within the purview of rule 4 of the *Hadenfeldt* case, *supra.*

Since this collision occurred within the intersection, the respective automobiles were "simultaneously approaching a given point within the intersection, within the meaning of the statute." (Paragraph 3 of the *Hadenfeldt* case, above quoted.) Under these circumstances, it was the primary duty of appellant to avoid this accident by looking

out for, and yielding the right of way to, the vehicle on his right, as required by RCW 46.60.150. In failing to perform that duty, appellant was guilty of contributory negligence, *as a matter of law,* which proximately caused this accident.

Needless to say, we have carefully considered the cases cited by appellant in support of his contention that the issue of his contributory negligence was properly for the jury. It is noted that our decision in *Garrett v. Byerly,* 155 Wash. 351, 284 Pac. 343, 68 A. L. R. 254 (1930) (relied on by appellant), in so far as it is inconsistent with *Martin v. Hadenfeldt, supra,* was expressly overruled in the latter case. In the *Hadenfeldt* case, *Thompson v. Fiorito,* 167 Wash. 495, 9 P. (2d) 789, 12 P. (2d) 1119 (1932), and *Martin v. Westinghouse Electric & Mfg. Co.,* 162 Wash. 150, 297 Pac. 1098 (1931), we held the question of contributory negligence to be for the jury. But, in each of those cases the plaintiff, disfavored driver, actually *saw* the favored driver, thereby presenting an issue for the jury under the fourth rule (or exception) of *Martin v. Hadenfeldt, supra.* The remaining cases cited by appellant are likewise factually distinguishable.

Since appellant was guilty of contributory negligence, as a matter of law, which was the proximate cause of the collision, the trial court did not err in granting respondent's motion for judgment n.o.v. Accordingly, we do not reach appellant's second assignment of error.

Judgment affirmed.

HILL, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.