[No. 35060.   Department One.   March 17, 1960.]

MARY ANN MYLNAR, *Appellant, v.* JAMES C. HALL *et al.,*
*Respondents.*[1]

[1]Reported in 350 P. (2d) 440.

*Edwin R. Johnson,* for appellant.

*Carnahan, Gordon & Goodwin (Harry Sager,* of counsel), for respondents.

DONWORTH, J.—Appellant seeks to recover for personal injuries and property damage arising from an automobile accident which occurred at approximately five o'clock p.m. on January 9, 1958, at the intersection of Van Tassel road

and east Main street, located near the east city limits of Sumner, Washington.

East Main is a county road which is blacktopped and is approximately eighteen feet wide. Generally, it runs in an east-west direction, and just west of the intersection with Van Tassel road it merges with state highway No. 410 which continues into Sumner.

Van Tassel road is a county road which also is black-topped and is approximately sixteen feet wide. It runs in a north-south direction.

State highway No. 410 connects the two cities of Sumner and Buckley and approaches Sumner in a winding fashion from the southeast. At the location of the accident, state highway No. 410 curves to the left from a northerly direction to a westerly direction. Van Tassel road has its beginning at the start of this curve and continues in a northerly direction. East Main merges with state highway No. 410 at the westerly end of the curve. Thus, the three highways form a triangle. It is approximately one hundred forty feet from the beginning of Van Tassel road to where it intersects with east Main.

It was dusk at the time of the accident and a light rain had just started to fall. Appellant was driving her 1953 Ford pickup truck west on east Main, approaching its intersection with Van Tassel road. Respondent James A. Hall, Jr., was driving a 1953 Ford, registered to his father, respondent James C. Hall, northward on Van Tassel road. As appellant proceeded in a westerly direction toward the intersection, she had a relatively clear view to her left across an open field. However, the view to her right was obstructed by a house at the northeast corner of the intersection, and it was therefore necessary for her to continue looking in that direction until she was nearly into the intersection. As appellant approached the intersection, at approximately twenty miles per hour, she looked first to her left and saw nothing, and then she looked to her right and saw that no vehicles were approaching from that direction. As she entered the intersection, she looked left

again, and, for the first time, saw the Hall vehicle, which was then about to enter the intersection.

Respondent James A. Hall, Jr., was proceeding north on Van Tassel road at approximately thirty to thirty-five miles per hour. He did not observe appellant approaching from his right until both vehicles were in the middle of the intersection. Before he could apply his brakes, the collision occurred, and his vehicle then continued on about one hundred feet beyond the intersection. The impact from the collision turned appellant's vehicle completely around so that it was left standing headed in the opposite direction from that in which it had been proceeding.

Appellant brought this action against respondents and the county of Pierce. The complaint alleged several grounds of negligence against respondents, and further alleged that the car was a family car being used for a family purpose. It was alleged that the county was negligent in failing to maintain a stop sign as required by law. Respondents answered and denied the affirmative allegations of the complaint and, as an affirmative defense and cross complaint, then alleged negligence on the part of appellant with a prayer for the recovery of damages to their vehicle. The county of Pierce, by answer, alleged that Van Tassel road was not an arterial highway and thus the county had no duty to maintain a stop sign at the intersection, and prayed that the action be dismissed as to it.

The case was tried to the court sitting with a jury. The court dismissed the action as to the county of Pierce, and, since no appeal was taken from the judgment of dismissal, the county is no longer involved in this case. The jury returned a verdict in favor of respondents. Appellant then moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was denied, and the court entered judgment upon the verdict for respondents, from which this appeal is taken.

Although there are seventeen assignments of error, the principal question is whether respondent James A. Hall, Jr. was negligent as a matter of law.

■ The collision occurred in the intersection and appellant's car had approached from the right of respondent James A. Hall, Jr. Thus, unless Van Tassel road was an arterial, respondent had the primary duty of avoiding this accident by looking out for, and yielding the right of way to, appellant as required by RCW 46.60.150. *Smith v. Laughlin*, 51 Wn. (2d) 740, 321 P. (2d) 907 (1958).

■ Van Tassel road was not an "arterial highway" as that term is defined in RCW 46.04.030, since Pierce county had never passed a formal resolution designating it as such.

■ However, the county commissioners had erected a stop sign on each side of Van Tassel road at the intersection where this collision occurred to control traffic entering the intersection from east Main. The stop signs were installed in the spring of 1956, after residents in the area had requested them. However, on Halloween night, October 31, 1957, the stop sign in the northeast corner of the intersection, which controlled traffic entering the intersection westward on east Main, had been removed (presumably by pranksters) and had not been replaced at the time of this accident. The stop sign on the opposite side of Van Tassel road, on the southwest corner of the intersection, was still standing at the time of the accident.

Respondents take the position that, even though Van Tassel road had never been officially designated as an arterial, the fact that stop signs had been erected at the intersection made it a *de facto* arterial and, therefore, respondent driver, James A. Hall, Jr., could not be held negligent as a matter of law, since RCW 46.60.150 has no application to arterial highways.

We are of the view that respondents' position is untenable. The evidence discloses that respondent driver, James A. Hall, Jr., had been traversing this intersection on Van Tassel road for about a year prior to the accident. On previous occasions he had observed the stop sign standing in the northeast corner of the intersection, but had failed to notice that it had been removed. From the date when the stop sign was removed to the date of the accident, a period

of over two months, respondent passed through this intersection on an average of three or four times a week. Thus, it certainly cannot be said that he did not have ample opportunity to apprise himself of the change in conditions.

In other words, we hold, as a matter of law, that respondent driver, James A. Hall, Jr., did not exercise reasonable care in failing to notice the removal of the stop sign after such sign had been removed for a period exceeding two months. Thus, Van Tassel road not being a *de facto* arterial highway, RCW 46.60.150 applies, and respondent (being the disfavored driver) must be held negligent as a matter of law, since his violation of the statute was the proximate cause of the accident. *Smith v. Laughlin, supra.*

To hold otherwise would lead to chaotic results. Simply because at one time a stop sign did exist to control traffic driving westward on east Main, does not give a motor vehicle operator the right to assume that such a condition will continue indefinitely in the future. As we said in *Hanson v. Anderson,* 53 Wn. (2d) 601, 335 P. (2d) 581 (1959):

"Every person using a street must exercise care for his own safety and is charged with notice of the street and highway signs. . . ."

■ Likewise, we here hold that every person using a street or highway must exercise care for his own safety and is charged with notice of the *removal* of street and highway signs. The relative rights and obligations of the operators of motor vehicles at intersections is governed by the presence or absence of such signs.

■ The only other question with which we need concern ourselves is whether the trial court erred in giving instruction No. 5, which reads as follows:

"When a car is registered in the name of a person, the law presumes that such person is the owner of such car and that anyone who is driving it, is his agent. However, this is only a presumption, and if in fact such person is not the real and actual owner, then he would not be responsible for acts of some other person driving the car. In this case, if you find that the 1953 Ford, driven by the son, James A. Hall, was registered in the name of his father, the defendant

James C. Hall, then there would be a presumption that the defendant father was the owner. However, if you find from all of the evidence that in fact the father was not the real owner, then there would be no liability on the part of the defendant parents, merely by reason of the registration of the car in the father's name."

Appellant claims that this instruction was confusing in that it creates the inference that if the father, James C. Hall, were not the real owner, the family car doctrine would not apply.

Assuming, *arguendo*, that instruction No. 5 was erroneous, it was not prejudicial since, under the facts of this case, we are clearly of the opinion that the doctrine had no application here.

To fasten liability upon the father, James C. Hall, under the family car doctrine, it would have to be found that he owned, provided, or maintained the 1953 Ford involved in this case for the general use, pleasure, and convenience of the family. *Dillon v. Burnett*, 197 Wash. 371, 85 P. (2d) 656 (1938); *Hart v. Hogan*, 173 Wash. 598, 24 P. (2d) 99 (1933).

The undisputed evidence discloses that the sole reason the car was registered in the father's name was because James A. Hall, Jr., was a minor, and he could secure financing to buy the car only by having it so registered. The father had a car of his own which he always used. He had driven the 1953 Ford involved in this case on only one occasion simply to try it out. The son, James A. Hall, Jr., earned his own living and made all the payments on the car except for a short period of time when he was unemployed. During this period, his father had helped him to meet his car payments by *loaning* him money. James A. Hall, Jr., had the exclusive use of the car except that it appears that the father could have used the car in the case of an emergency if his own car was not in operating condition. In purchasing the car here involved, James A. Hall, Jr., had traded in the car he then owned as a down payment on the purchase price.

Under these facts, we hold, as a matter of law, that the

family car doctrine has no application here. Not only was the son, James A. Hall, Jr., the real owner of the car, but, also, he had the exclusive control and use of the car. Thus, it cannot be said that this was a car that was owned, provided, or maintained by the father, James C. Hall, for the general use, pleasure, and convenience of the family.

In view of the errors discussed above, the judgment is reversed, and the cause remanded with directions to grant appellant a new trial.

WEAVER, C. J., MALLERY, ROSELLINI, and HUNTER, JJ., concur.

