[No. 25351. Department One. August 15, 1935.]

H. C. COMSTOCK, *Respondent,* v. L. B. SMITH *et al., Appellants.*[1]

[1]Reported in 48 P. (2d) 255.

*Ralph S. Pierce, H. C. Atherton,* and *E. E. Wager,* for appellants.

*E. K. Brown,* for respondent.

GERAGHTY, J.—This action was brought by the plaintiff to recover damages for personal injuries sustained in a collision between an automobile driven by him and one driven by James Smith, a boy sixteen years of age, son of defendants; the car driven by the son being the family car of the parents.

The accident occurred about eleven o'clock p. m. November 10, 1933, at the intersection of Water and Sixth streets in the city of Ellensburg. Water street runs north and south, and Sixth east and west. Sixth street is paved from the intersection east, and Water street is paved south from the north line of Sixth street. Both streets are approximately forty-four feet in width between curbs. Main is the next street east of Water street and is an arterial way with stop signs on either side at its intersection with Sixth street.

At the time of the accident, the plaintiff was driving north on the right-hand side of Water street at the rate, as he testified, of from ten to twelve miles an hour. As he drove across the intersection, and when the front end of his car was within ten feet of the north curb line of Sixth street, his car was struck on the right-hand side by the Smith car driven westerly on Sixth street. The force of the impact drove the plaintiff's car thirty-five feet, in an arc, to the north-

west corner of the intersection, the car facing south-westerly when it came to rest. The Smith car came to rest past the center of the intersection.

The intersection was unobstructed in all directions. Earlier in the night, it had been quite foggy, but the fog had lifted somewhat by the time of the accident. In reporting to the sheriff's office, young Smith gave the foggy condition as the cause of the accident. The plaintiff testified that, before entering the intersection, he looked to the east for a distance of one hundred and fifty feet and saw no car approaching; that he looked again as he approached the center of the intersection and saw no oncoming cars.

Smith testified that he did not see plaintiff's car until immediately before the impact. He had been playing an instrument at a dance held in a hall east of Main street and, when the collision occurred, was on the way to his home to procure a repair part for the instrument, intending to return to the dance. He admitted he was in somewhat of a hurry to get back to the dance. He testified that, in driving west, he stopped at Main street, proceeded across in low gear, changed to second after crossing the street, and to high when he reached the alley in the middle of the block about one hundred and fifty feet east of Water street, and that he had attained a speed of from twenty to twenty-three miles an hour at the time of the collision.

We have thus the unusual condition where the driver of each car testified that he looked but did not see the other car. Other than his own, there was no testimony as to the speed of the plaintiff.

The witness Westenhiser, employed in a gas station at the northwest corner of Main and Sixth streets, testified that Smith drove past his station just as he was locking the doors for the night; that Smith hailed him as he passed, and that, after he had taken three or four

steps, he heard the crash at the Water street intersection two hundred and fifty-seven feet distant. He testified that Smith put his car into high gear in front of the gas station, gained speed rapidly, which he estimated at thirty-three miles an hour by the time the car reached the intersection.

The force of Westenhiser's testimony was somewhat weakened by the fact that, shortly after the accident, he had made a signed statement, procured by an investigator for the defendants or their surety, in which he estimated the speed at twenty miles and stated that Smith shifted into second gear in front of the station. He explained the discrepancy between his testimony and the earlier statement by saying that, after giving further consideration to the matter and making a trial with a car, he came to the conclusion that Smith was going at the higher rate of speed.

Three experienced garage men were called by the plaintiff as expert witnesses and were allowed by the court to testify as to the speed of the Smith car, deducing their conclusions from the condition of the plaintiff's car after the accident. In their opinion, the Smith car, at the time of the impact, was driven at a minimum speed of thirty miles an hour—it might have been really forty—they could only approximate.

The case was tried to the court without a jury. The court made findings of fact and conclusions of law in favor of the plaintiff, and a judgment was entered awarding him the damages found by the court. This appeal is taken by the defendants from the judgment.

While several special assignments are made, the principal contention of the appellants here is that the trial court erred in not finding the respondent guilty of such contributory negligence as barred his right to recover. The appellants concede that Smith,

the driver of the car, was guilty of negligence in failing to see the respondent's car, but they do not concede that the car was driven in excess of the speed permitted by statute, which, at the intersection here involved, was twenty-five miles an hour. The court found that, at the time of the collision, the Smith car was driven in excess of twenty-five miles an hour.

Independently of the expert opinion of the three garage men, the court would have been warranted in its findings as to the speed of the Smith car. Without the aid of any expert testimony, the condition of respondent's car and the position of both cars after the collision would indicate that the Smith car was driven at a high rate of speed. Upon the evidence, the court could also very well have found that, whether or not the respondent looked to his right for approaching traffic, his failure to look could not be considered negligence contributing proximately to the accident, because, if he had looked and seen the Smith car in the position it must have been in when he entered the intersection, he would have been justified, even though the disfavored driver, as a reasonably prudent person, in assuming that he had a proper margin of safety in crossing ahead of the other car.

As to the appellants' complaint of the reception of the testimony of experts upon the question of the rate of speed of the Smith car, as inferred from the condition of the respondent's car, we have repeatedly held that the impact and violence of a collision may be taken into consideration in determining the rate of speed. *Copeland v. North Coast Transportation Co.,* 169 Wash. 84, 13 P. (2d) 65; *Hunter v. Lincoln Stages, Inc.,* 161 Wash. 634, 297 Pac. 179; *Harry v. Pratt,* 155 Wash. 552, 285 Pac. 440; *Day v. Polley,* 147 Wash. 419, 266 Pac. 169; *Osborn v. Seattle,* 142 Wash. 25, 252 Pac. 164.

The trial court admitted the evidence upon the view that, since the court itself may consider the force and violence of a collision in determining the rate of speed, it may have the aid of expert testimony in reaching its conclusion. But, while the trial court permitted the testimony complained of, it is apparent that it did not attach any undue significance to it. In a memorandum opinion passing upon the motion for a new trial, the court said that, independently of the testimony of the experts, the evidence preponderated in favor of his finding that Smith was exceeding the lawful rate of speed of twenty-five miles an hour.

In passing upon an objection to the admission of testimony in *Dillabough v. Okanogan County,* 105 Wash. 609, 178 Pac. 802, a traffic accident case tried to the court without a jury, this court said:

"The first error assigned is on the ruling of the court admitting this testimony. But, while it is probable that the witnesses in certain instances were permitted to go beyond the rule, we find nothing in it that requires a new trial, or a rendition of a judgment for the other side. As we have stated, the action was tried by the court sitting without a jury. It is thus triable in this court *de novo.* (Rem. Code, § 1736.) The admission of inadmissible evidence in cases so tried is, therefore, not ground for a new trial. The appellate court can and will disregard the inadmissible evidence and try the issues submitted upon the evidence legitimately in the record. If it finds that the judgment must rest upon evidence not admissible, it will reverse the judgment rendered and direct a judgment for the other party. On the other hand, if it finds that the evidence preponderates in favor of the judgment, after disregarding the inadmissible evidence, it will affirm the judgment. *Rohrer v. Snyder,* 29 Wash. 199, 69 Pac. 748. Indeed, we have admonished trial courts, in the trial of causes without a jury, to be 'liberal . . . in admitting evidence so that this court, in the event of an appeal, will on a trial *de novo,* have all material facts before it for consideration, and thus avoid the

necessity of the cause being remanded for the admission of material evidence erroneously rejected.' *Degginger v. Martin,* 48 Wash. 1, 92 Pac. 674.''

Wholly disregarding the expert testimony, we cannot say that the evidence otherwise preponderates against the court's findings.

The judgment will be affirmed.

MAIN, TOLMAN, and BEALS, JJ., concur.