[No. 26364. Department Two. April 21, 1937.]

JOSEPH KENNETH GAYSON, as *Guardian ad Litem* of *Beatrice Gayson, a Minor, Respondent,* v. ANNA M. DAUGHERTY, *Appellant.*[1]

[1]Reported in 66 P. (2d) 1148.

*Kahin & Carmody,* for appellant.

*Cameron Sherwood,* for respondent.

BEALS, J.—At about eight-forty-five, on the morning of December 16, 1935, Beatrice Gayson, on her way to the Franklin high school, in which she was a pupil, was standing on the southwest corner of the intersection of Dearborn street and Tenth avenue south, in the city of Seattle, waiting for a street car. Dearborn street runs generally east and west, and is crossed at right angles by Tenth avenue south. The former highway was paved with brick, save the middle of the street, which was occupied by car tracks. Tenth avenue south is an unpaved street, surfaced with gravel. Along each of the streets are concrete sidewalks. On the southwest corner of the intersection, stood a wooden telephone pole of the usual type, and two or three feet west thereof stood a four by four post carrying a sign bearing the words, "School Crossing, Stop When Occupied." While waiting for a street car, Beatrice was leaning against the southerly side of the telephone pole, facing south. Both the telephone pole and the sign post stood in the concrete sidewalk.

The defendant in this action, Anna M. Daugherty, was a teacher in the Franklin high school, and was residing some distance to the north of the intersection mentioned. On the morning in question, she started for the school, driving her Ford coupe. She proceeded down Fifth avenue to Dearborn street, then turned east and proceeded up that thoroughfare. It had rained not long before, and the streets were wet. The morning was cool, but Miss Daugherty had noticed no ice nor snow. She testified that she had been driving at approximately twenty-five miles per hour. As Miss Daugherty approached the corner of the intersection where Beatrice was standing, her automobile skidded, struck the telephone pole and then the sign post, breaking the latter off even with the ground. The sign post was thrown several feet, and struck Beatrice, inflicting upon her injuries for which her father, as her guardian, sued in this action. Recovery was also asked for the amount paid for doctors and other incidental expenses. The defendant denied liability, and the action was tried to a jury, which returned a verdict of $750 in favor of Beatrice Gayson, and one in her father's favor for $266.20. From a judgment entered on the verdict, the defendant has appealed.

Error is assigned upon the denial of appellant's motion for a nonsuit; upon denial of her motion for judgment in her favor notwithstanding the verdict; and upon the entry of judgment against her. Appellant also contends that the trial court erred in denying her motion for a mistrial because of certain testimony which appellant contends wrongfully brought before the jury the matter of indemnity insurance. Appellant also contends that the verdict in favor of Miss Beatrice is excessive, and that the amount thereof should be reduced.

■ We shall first discuss the second error assigned. In the course of the trial, Doctor H. J. Green, who had attended Beatrice after her injuries, testified as a witness for respondent. He stated that his bill for professional services rendered in connection with the case had not been fully paid. On direct examination, he testified that the X-ray plates which he had studied had been taken by a doctor other than himself, and on cross-examination, counsel for appellant proceeded to interrogate him as to the occasion for calling in another doctor to make the X-ray exposures, causing additional expense, when the witness himself might have attended to this phase of the case. In the course of this cross-examination, the following occurred:

"Q. I have no criticism of you, doctor, but the reason was that he started taking the x-rays, and that is the reason she went to the two of you. But subsequently to the first x-ray, you could have taken care of all this work? A. That is right; but in medical-legal cases, practically all of those we get are taken by an x-ray expert. Q. Now, you say, 'in medical-legal cases'? A. Yes, sir. Q. You knew this was a medical-legal case when this young lady first came to you, didn't you? A. The lady's car was covered by insurance, that is all I know."

Immediately after the witness made the answer last above quoted, counsel for appellant suggested that he desired to present an argument, whereupon the court promptly instructed the jury to wholly disregard the answer of the witness, and ruled that the answer "is stricken from this case for every purpose." Appellant's counsel then moved for a mistrial, which motion the trial court denied. Appellant argues that the refusal of the court to grant a mistrial was error, which entitles appellant to a reversal of the judgment appealed from.

Appellant's counsel was apparently endeavoring to

show that unnecessary expense had been incurred in connection with the young lady's injury. In his first answer quoted, the witness used the phrase "medical-legal cases." This phrase was repeated by appellant's counsel in each of the next two questions. It must be held that the answer given by the witness, of which appellant complains, was invited by the cross-examination. The court immediately instructed the jury to disregard the answer, and struck it from the record. Assuming that a "medical-legal case" is a case concerning a patient who may be involved in a lawsuit concerning the injury which is being treated, appellant's counsel was deliberately pursuing a line of cross-examination which might well bring some such answer as the witness made. Upon the record, it cannot be held that the trial court erred in refusing the motion for an order declaring a mistrial.

Upon her first assignment of error, appellant argues that respondent failed to produce substantial evidence of negligence on the part of appellant, and that judgment should have been entered in appellant's favor as matter of law. The injured girl, standing with her back to the street, did not see the approach of the automobile. When she felt the jar caused by the automobile striking the telephone pole, she was projected, or jumped, in the direction towards which she was facing and into the path of the flying sign post.

There were two witnesses to the accident beside appellant—Earl N. Green and Walter Mancevich, high school students, who were approaching the intersection from the south along the sidewalk on the west side of Tenth avenue. These boys saw Beatrice leaning against the telephone pole, looking in their direction, and they observed appellant's automobile approaching from the west at approximately the time it commenced to skid. It appears that appellant, when

she was about twice the length of her car west from the telephone pole, felt the rear wheels of her car begin to sway. The car then turned completely around, the right side of the car scraping the telephone pole until the hinges of the door caught and swung the front of the automobile around and against the sign post, breaking it short off and throwing it against Miss Beatrice.

The car came to rest headed approximately in the direction from which it had come. With the assistance of bystanders, appellant's car was placed back on the pavement, and proceeded on its way. None of the glass in the car was broken. Appellant and the two high school boys both testified that there was a thin film of ice over the brick pavement at the place where the car skidded. Two strips had been worn through this ice by passing traffic, but appellant failed to observe the dangerous condition of the pavement. One of the boys who saw the accident testified that appellant's car was not going fast. Appellant testified that she had been going about twenty-five miles an hour, and slowed down somewhat upon approaching the crossing. The boys testified that the broken sign post was knocked across the sidewalk a distance of about fourteen feet, and one of them stated that the notebooks which Miss Beatrice had been holding fell twenty or twenty-five feet away.

Appellant relies upon the well established rule that

"The mere skidding of an automobile is not an occurrence of such uncommon or unusual character that alone and unexplained it can be said to furnish evidence of negligence in the operation of a car." *Osborne v. Charbneau,* 148 Wash. 359, 268 Pac. 884, 64 A. L. R. 251.

She also cites the opinion of this court in the case of *MacDonald v. Balletti,* 164 Wash. 595, 4 P. (2d) 506.

Respondent pleaded ordinance No. 64692, of the city

of Seattle, regulating vehicular traffic along the streets of that city, § 35 of which defines reckless driving, and § 40 sets forth the regulations governing speed. The injured girl was standing in a place where she had a perfect right to be. The condition of street pavements early on a December morning after a rain, the temperature hovering around the freezing point, often constitutes a traffic hazard. Under the ordinance above referred to, "the operation of a vehicle in such a manner as to endanger or inconvenience unnecessarily other users of the streets" constitutes reckless driving.

While there was no evidence to the effect that appellant was actually speeding, in determining the question of whether appellant was or was not negligent, the jury had the right to consider all the circumstances of the case, and to decide whether or not, under all these circumstances, appellant was or was not negligent. A rate of speed may be perfectly safe under certain conditions, and reckless and unsafe under others. It appears beyond question that the pavement was slippery because of the presence of a film of ice thereon. This constituted a very serious traffic hazard, and the jury found, under proper instructions, which were not excepted to, that appellant's negligence was the proximate cause of the injuries to Miss Beatrice. The trial court held that the evidence presented a question for the jury, and it cannot be held that this ruling should be declared erroneous.

■■ Of course, the evidence must be considered in the light most favorable to respondent, and appellant being, of course, an interested witness, the jury were entitled to consider her evidence in that light. In this connection, respondent cites *Johnson v. Elmore,* 141 Wash. 293, 251 Pac. 558; *Eggert v. Schumacher,* 173 Wash. 119, 22 P. (2d) 52; *Gaskill v. Amadon,* 179 Wash.

375, 38 P. (2d) 229. Certainly the automobile struck the sign post with considerable violence, as a four by four post was broken and thrown fourteen or fifteen feet. In the case of *Gaskill v. Amadon, supra,* it was held that:

"The impact and violence of a collision may be taken into consideration in determining the rate of speed. *Copeland v. North Coast Transportation Co.,* 169 Wash. 84, 13 P. (2d) 65, and cases cited.

"While there was no direct evidence of the rate of speed at which appellants' car was being driven, yet the fact that it ran into the intersection and that the collision occurred therein causing such damage, is some evidence from which the jury might infer excessive speed under the circumstances existing at that time and place. *Hunter v. Lincoln Stages, Inc.,* 161 Wash. 634, 297 Pac. 179."

The case of *Comstock v. Smith,* 183 Wash. 94, 48 P. (2d) 255, is to the same effect.

Bearing in mind the rule relied upon by appellant, to the effect that a mere scintilla of evidence is not sufficient to send a case to the jury, we hold that in the case at bar the trial court properly submitted the matter to the trier of the facts.

Finally, appellant contends that the $750 awarded to Miss Beatrice was so excessive, in view of her injuries, that this court should direct a reduction in the amount of the judgment. Evidence introduced by respondent tended to prove that Miss Beatrice, then fourteen years of age, suffered a fracture of the metacarpal bone of the right hand leading to the little finger; that her right hand was badly bruised and swollen, and that her left hand was also bruised; that one of her ankles was badly sprained; that she received a blow in her chest, from which she suffered some pain; that she was confined to her room for most of the time for several weeks after the accident. It further appears that the fractured bone in her hand failed to

heal perfectly, and at the time of trial was somewhat out of alignment, forming a disfiguring lump over the fracture. Her hand also suffered some limitation of movement. This matter was presented to the trial court on the argument of appellant's motion for a new trial, and the amount of the award was not reduced. The jury may well have believed that, as a result of the accident, Miss Beatrice would go through life with an injured right hand. The jury having fixed the damage, and the trial court having refused to reduce the amount of the verdict, it cannot now on appeal be held that the verdict is so out of line as to require some reduction of the amount awarded.

Finding no error in the record, the judgment appealed from is affirmed.

STEINERT, C. J., TOLMAN, HOLCOMB, and ROBINSON, JJ., concur.

[1]Reported in 66 P. (2d) 1138.