[No. 34246.    *En Banc.*    January 15, 1959.]

WILL W. BOWN, *Appellant*, v. DONALD R. FLEISCHAUER *et al.,*
*Respondents.*[1]

[1]Reported in 334 P. (2d) 174.

HUNTER, ROSELLINI, and OTT, JJ., dissent.

·Joseph L. McDole and Joseph P. Delay, for appellant.

John D. MacGillivray and Willard W. Jones, for respondent.

HILL, J.—We are here concerned with an automobile collision that occurred shortly after a right turn made onto a one-way street from a private driveway.

The principal question presented is whether the driver of the car turning from the driveway was negligent because she failed to yield the right of way as required by RCW 46.60.190, or, otherwise stated, whether she had such a reasonable margin of safety that she was entitled to enter the street from the driveway and was ·properly and lawfully upon the street when her car was hit in the rear. RCW 46.60.190 reads as follows:

"Emerging from alleys or private property or across sidewalk area. It shall be unlawful for the operator of a vehicle to emerge from an alley, ·driveway, building exit, private way, or private property, or from off the roadway of a public highway, onto the roadway of a public highway or across a sidewalk or into the sidewalk area extending across any such alley, driveway, building exit, private way, or private property without bringing the vehicle to a full stop and yielding the right of way to all pedestrians upon the side-

walk and all vehicles upon the public highway. [1937 c 189 § 92; RRS § 6360-92.]"

The undisputed facts are: Mrs. Frances M. Fleischauer, who will be referred to as though she were the only defendant, after completing her work as a hat-check girl at the Spokane Elks Club at about one o'clock in the morning, drove her Cadillac out of the nearby parking lot on the north side of Riverside avenue onto that avenue. At that point Riverside avenue, which runs east and west, was divided by a parkway or island; the portion of the avenue north of the parkway was twenty-four feet in width and was for west-bound traffic only. It was this portion of the avenue onto which Mrs. Fleischauer drove her car from the exit driveway of the parking lot. She stopped before entering upon Riverside avenue, her car at this time being headed south. She could see to the east (on her left) a distance of one block. She made a right turn onto the avenue and proceeded slowly westward along this avenue until the front of her car was about thirty feet beyond the exit driveway. The rear of her car was then about twelve feet beyond the exit driveway, at which point it was sideswiped by a car driven by Patrick Queen. Queen's car left skidmarks for eighty-three feet before the point of impact, and careened on for one hundred fifteen feet, jumping a curb onto the parkway and finally striking a tree with such force as to push its motor back about a foot and a half. Mrs. Fleischauer was proceeding so slowly that one witness testified he thought she was parked. Her car stopped almost at the point of impact.

The plaintiff, Will W. Bown, was a passenger in the Queen car. He sues the Fleischauers for serious personal injuries sustained as a result of the collision. It is his position that any negligence of Patrick Queen cannot be imputed to a guest in the Queen car, and that if Mrs. Fleischauer was negligent in failing to yield the right of way to the Queen car, he is entitled to recover.

The trial court held, as a matter of law, that RCW 46.60-.190 did not apply because Mrs. Fleischauer had, before the

collision, entered lawfully and properly upon the highway and was a preceding car so far as the Queen car was concerned, and that there was no evidence of any negligence on her part.

The issue then becomes: Is there sufficient evidence of negligence on the part of Mrs. Fleischauer to take this case to the jury?

■ As indicated in *Nelson v. Molina* (1959), *ante* p. 412, 334 P. (2d) 170, and the cases therein cited, a disfavored driver is not absolved from negligence in failing to yield the right of way just because he gets out of the intersection before a collision occurs; but his negligence is established if he enters a street or highway at such a time and place as to produce an emergency situation in which the favored driver is unable, in the exercise of reasonable skill and judgment, to avoid a collision.

Here it is undisputed that Mrs. Fleischauer stopped before entering Riverside avenue, with her car standing where the parking lot exit driveway crosses the sidewalk, and she could see at least a block to the east. She testified that she saw no car coming (although the plaintiff contends that she should have seen the Queen car). It is likewise undisputed that she made her right turn and proceeded slowly westward, and that at the time of the collision the front of her car was approximately thirty feet west of the exit driveway and the rear of her car was twelve feet beyond that driveway.

It is likewise undisputed that there was room for the Queen car to have passed to the left of the Fleischauer car.

■ If the Queen car was more than a block away when Mrs. Fleischauer started her turn, she was justified, even though being the disfavored driver, in assuming that she had an ample margin of safety to enter Riverside avenue, make her right turn, and proceed on her way. *Comstock v. Smith* (1935), 183 Wash. 94, 48 P. (2d) 255.

What then is the evidence on which the jury must find that the Queen car was within a block of the driveway when Mrs. Fleischauer entered Riverside avenue?

None of the four occupants of the Queen car is able to say how far away that car was when they first saw the Fleischauer car. The plaintiff had his head turned, talking to the two passengers in the back seat, one of whom says she was asleep. The driver Queen's distinct recollection blacks out two blocks from the scene of the collision. He testified, "I have a vague memory of seeing the back end of a car, and that is about all I can tell you about it," and the other passenger in the back seat testified,

". . . I got a split second vision of a car sitting approximately crossways in the street. I can't say which way it was sitting—just a split second vision of it, and grabbed my head and turned around, and that is the last thing I know."

There is nothing here to establish where the Queen car was when the Fleischauer car entered Riverside. Not even the testimony quoted above, which places the Fleischauer car crossways in the street just before the impact, casts any light on the point in issue; such testimony, furthermore, seems completely incredible in light of the position of the cars at impact as shown by reports of the police officer and witnesses who were present and by the photographs taken at the scene of the accident.

The plaintiff's case must rest on an inference from the testimony of the witness, Richard L. Dennison, who had the "split second vision" to which we have just referred. He insists the Queen car was traveling approximately twenty-five miles per hour. The inference is that if the Queen car was traveling at that speed, it must have been within a block of the Fleischauer car when it entered Riverside avenue, and that Mrs. Fleischauer cannot be heard to say that she did not see what was there to be seen.

An officer, by way of impeachment, testified that Dennison told him at the hospital that the Queen car was going "pretty fast."

It was stipulated,

". . . that traveling at 20 miles an hour on dry pavement, with good braking surfaces, a car can come to a dead

stop in 21 feet after application of the brakes. . . . And at 30 miles an hour a car could come to a dead stop 46 feet after application of the brakes; and at 40 miles an hour a car could come to a dead stop 82 feet after application of the brakes. . . . At 50 miles an hour you come to a dead stop after applying your brakes in 128 feet; 60 miles an hour you come to a dead stop after applying your brakes at 185 feet, . . . 70 miles an hour you come to a dead stop in 251 feet after applying your brakes."

■ Disregarding the impeachment, these stipulations and other circumstances—coupled with the undisputed testimony of eighty-three feet of skidmarks on dry pavement before impact, and careening for one hundred fifteen feet further until stopped by a tree; and the testimony of five disinterested eye witnesses whose estimates of the Queen car's speed were from fifty to seventy miles an hour—satisfy us that there is no credible testimony or inference therefrom that places the Queen car within a block of the Fleischauer car when it started out of the parking lot and onto Riverside avenue; and that there is no evidence of any negligence on the part of Mrs. Fleischauer.

Whether or not the Queen car, regardless of its speed, was in sight when Mrs. Fleischauer came onto Riverside avenue, it is undeniably true that Mrs. Fleischauer had time to travel a distance of between twelve and thirty feet beyond the parking lot exit driveway before being hit. She was traveling so slowly that she stopped almost on the point of impact. It is likewise certain that the Queen car could have safely passed on her left.

■ If this be considered an "entrance from a driveway case," there is no evidence that Mrs. Fleischauer did not have an ample margin of safety to enter onto Riverside avenue; nor is there evidence that she created an emergency situation which caused the favored driver to lose control of his car; nor any situation where the reasonable exercise of driving skill by the favored driver would not have avoided the collision.

The trial court was correct in concluding that there was no evidence to support a finding of negligence on the part of Mrs. Fleischauer.

It is also urged that the trial court erred in denying the plaintiff's motion for a default judgment. The motion was served and filed on July 30th (all dates, 1956). In the affidavit in support of the motion, counsel for the plaintiff stated that on June 30th the defendant was served personally with a summons and complaint; that on July 5th the attorneys for the defendant served notice of appearance, but thereafter failed to serve any pleadings or make any further appearance in the action. A motion to make more definite and certain was served and filed by the defendant on August 10th. After hearing argument of counsel on August 20th, the trial court on that date denied the motion for default, and granted the motion for a bill of particulars.

The rule is well established in this state that the granting of or refusal to grant a motion for default rests within the sound discretion of the trial court. *Paine-Gallucci v. Anderson* (1949), 35 Wn. (2d) 312, 212 P. (2d) 805; *Garrett v. Nespelem Consolidated Mines* (1943), 18 Wn. (2d) 340, 139 P. (2d) 273.

In this case there is no statement of facts by which we may determine whether the trial court abused its discretion. The following quotation from *Garrett v. Nespelem Consolidated Mines, supra,* disposes of the plaintiff-appellant's contention (p. 343),

"We cannot agree with counsel for appellant that the statute (Rem. Rev. Stat., § 411 [now RCW 4.56.160, Judgment by default.]) does not permit any latitude for the exercise of discretionary power in the matter of granting or denying a petition for an order of default. The statute does not divest the trial court of discretion. *The only limitation upon the exercise of the discretionary judicial power to grant or deny the petition is that it must not be abused.*

"In this case, there is no statement of facts by which we may determine whether the trial court abused its discretion in denying the petition for an order of default, and, *in the absence of an affirmative showing to the contrary, the presumption is conclusive* that the discretion was rightly exercised. . . ." (Italics ours.)

The judgment of dismissal is affirmed.

WEAVER, C. J., MALLERY, DONWORTH, FINLEY, and FOSTER, JJ., concur.

HUNTER, J. (dissenting)—For convenience and better continuity, the facts and issues will be re-stated in this dissent.

An automobile collision occurred on Riverside avenue in Spokane, Washington, March 17, 1956, at approximately one o'clock in the morning. The plaintiff Will W. Bown, a guest passenger in one of the automobiles involved, brought this action against the defendant Frances M. Fleischauer, the driver of the other car, to recover damages for his personal injuries, loss of wages, and medical expenses. Although her husband was joined as a party defendant, Frances Fleischauer will be referred to herein as though she were the sole defendant (respondent).

The plaintiff alleged that the defendant who was entering Riverside avenue from a private driveway, was negligent in failing to yield the right of way, and that such negligence was the proximate cause of the accident. The defendant denied that she was negligent and by way of affirmative defenses alleged: (1) That she stopped and looked before leaving the driveway and seeing no traffic proceeded to turn right; that the collision was caused solely by the negligence of the plaintiff's host-driver; (2) that the plaintiff was guilty of contributory negligence in riding with a driver who he knew, or should have known, was intoxicated, and without remonstrating against his speed and recklessness.

The issue of whether the defendant stopped before entering the avenue was withdrawn during the trial on the defendant's motion without objection by the plaintiff.

At the close of all the evidence, the defendant challenged the sufficiency thereof to take the case to the jury. The trial court concluded that the plaintiff had failed to prove any negligence on the part of the defendant, and that the collision resulted *solely* through the negligence of the appellant's host driver Queen. Judgment was entered accordingly dismissing the action with prejudice. This appeal followed.

Appellant's first assignment of error is that the trial court erred when it denied his motion for a default judgment.

The majority is correct in its disposition of this assignment. The granting of or refusal to grant a motion for default rests within the sound discretion of the trial court.

The proceedings at the hearing on the motion are not set forth in the statement of facts, and the order of the trial court denying the motion does not recite any reasons relied upon by the court in making its ruling. Therefore, from the record presented on this appeal, there is *no affirmative showing* that the trial court abused its discretion in denying the appellant's motion. Hence, this court is bound by the conclusive presumption that the discretion was rightly exercised and not abused. *Paine-Gallucci v. Anderson*, 35 Wn. (2d) 312, 212 P. (2d) 805 (1949); *Garrett v. Nespelem Consolidated Mines*, 18 Wn. (2d) 340, 139 P. (2d) 273 (1943).

Appellant's remaining assignments of error raise the question of whether the trial court erred in sustaining respondent's challenge to the sufficiency of the evidence and dismissing the action without submitting the case to the jury.

A challenge to the sufficiency of the evidence, a motion for nonsuit, or a motion for a directed verdict, admits the truth of the opposing party's evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the party against whom the motion is made. *Traverso v. Pupo*, 51 Wn. (2d) 149, 316 P. (2d) 462 (1957). In ruling upon a challenge to the sufficiency of the evidence, a motion for nonsuit, or a motion for a directed verdict, no element of discretion is involved and the trial court can *grant* such motion only when it can be held, as a matter of law, that there is no evidence or reasonable inference therefrom to sustain a verdict. *Fink v. Dixon*, 46 Wn. (2d) 794, 285 P. (2d) 557 (1955); *Williams v. Hofer*, 30 Wn. (2d) 253, 191 P. (2d) 306 (1948). Reviewing the evidence with these rules in mind, the facts appear as follows:

Immediately prior to the collision, the appellant was riding as a guest passenger in an automobile owned and being driven, at the time, by his host Patrick Queen. The appellant was in the front seat on the right-hand side and Carolyn and

Richard L. Dennison (also guest passengers) were seated in the back. The Queen car was proceeding in a westerly direction on Riverside avenue when it collided with the left rear fender of the respondent's car, a short distance west of the private parking lot from which it had emerged. After the initial impact, the Queen car traveled approximately one hundred and fifteen feet before it struck a tree stopping it. As a result of this accident, the appellant suffered serious injuries.

On the evening preceding the accident the respondent was employed at the Spokane Elks Club and after finishing her evening's work went to the private parking lot nearby where she had parked her car. The entrance and exit to this lot are both on the north side of Riverside avenue. Respondent testified that she stopped at the curb line of the west exit driveway and looked in both directions. *Seeing* no traffic she proceeded to turn right onto the avenue. From the place where she stopped she stated that she could see about a block to the east and that her vision for this distance was unobstructed. She testified further:

"Q. About how long was it from the time you looked east that you pulled out into the street? A. Well, it is an automatic clutch, and I would say it is just a small—just a short time. Q. Just two or three seconds? A. Just the normal time for that to take hold."

Riverside avenue, at the point where it intersects with the parking lot in question and for approximately two blocks to the east and for several blocks to the west, except at intersections, is divided by a center parkway or traffic island. The traveling portion north of the parkway or island is twenty-four feet wide and is for west bound (one-way) traffic only. This portion has no marked lanes for travel, and parking is permitted only on the north side. The maximum lawful rate of speed in this area is twenty-five miles per hour.

The point of impact was established at approximately twelve feet west of the west exit driveway of the parking lot. The physical facts reveal that the pavement was dry at the time of the accident; that the Queen car left skid

marks for a distance of eighty-three feet prior to the impact and traveled one hundred fifteen feet thereafter, before it struck a tree with sufficient force to push the motor back about a foot and a half. The evidence that there was sufficient space between the left of the respondent's car and the center parkway for another to pass appears to be uncontradicted.

Patrick Queen, who was also injured as a result of the accident, testified that he could not remember the speed he was traveling prior to the collision, but that he did not believe it was excessive. Richard L. Dennison (guest passenger in the Queen car) testified that the car in which he was riding was traveling approximately twenty-five miles per hour. On cross-examination he testified, in part, as follows:

"Q. You have been in the body and fender business? A. Yes, sir. Q. And you have had in the shop—whether at Stoddard and Wendle or wherever it was you were working—lots of cars that have been in accidents? A. Yes, sir. Q. *Did you ever see a car like that that had skidded 83 feet, leaving rubber burns on the pavement, in a side-swipe collision with another car, and then proceed down the street and hit a tree, and do that damage, and travel 25 miles an hour in your business as a repairman?* A. *Yes, sir, I have.* Q. You have? A. Yes, sir. Q. Skidding 83 feet and doing that damage at 25 miles an hour? A. I have seen cars going at less speed than that and do more damage than that in the front end. Q. *From your experience in automobile work and repair work don't you know, Mr. Dennison, that a car traveling 25 miles an hour on dry, level pavement can stop in 21 feet?* A. *Yes, sir, approximately they can.* Q. Well, then, what would you say about 83 feet of skid, and doing this damage—still say he was— A. May I ask a question, sir? Q. Yes. A. Was the skid marks up there to the impact, or when we collided with this other car? Q. Yes. A. There was none after? Q. None after. Any other questions? A. No, sir. Q. *You still say 25 miles an hour? A. I would say approximately, sir. He wasn't exceeding the speed limit at all.*" (Italics ours.)

Thereafter, on redirect examination, he testified:

"Q. Counsel asked you about 83 feet of skid, Mr. Dennison. Do you know the measure of how fast *a car* would be

traveling if it would leave 82 or 83 feet of skid? A. I would say *approximately—under* 40 miles an hour." (Italics ours.)

It was within the province of the jury to determine the credibility and weight to be given to the testimony of this witness. See *McUne v. Fuqua*, 42 Wn. (2d) 65, 253 P. (2d) 632 (1953); *Rettinger v. Bresnahan*, 42 Wn. (2d) 631, 257 P. (2d) 633 (1953). See, also, 88 C. J. S. 408, 475, Trial, §§ 208, 214. Thus, considering Dennison's testimony in the light most favorable to the appellant, the jury would be entitled to believe that the speed at which the Queen car was traveling, prior to the collision, would have placed it within the respondent's unobstructed range of vision (one block) at the time she entered the street, notwithstanding her testimony that she looked and did not see the car. If the Queen car was there to be seen, the respondent would be charged with having seen it. See *Roberts v. Leahy*, 35 Wn. (2d) 648, 214 P. (2d) 673 (1950); *Silverstein v. Adams*, 134 Wash. 430, 235 Pac. 784 (1925).

There was no deception in this case since one is not deceived by that which one does not see. *Smith v. Laughlin*, 51 Wn. (2d) 740, 321 P. (2d) 907 (1958), and cases cited therein.

It must be remembered that the respondent, entering a public street from a private driveway, was the disfavored driver, and it was her duty (1) to bring her car to a full stop at a point where, before entering the street, she could see approaching traffic, (2) to look and observe traffic conditions, (3) to yield *the right of way to all vehicles upon the street*, and (4) to adopt such additional precautions as may have been necessary to assure a reasonable margin of safety under the existing circumstances. See *Sandberg v. Spoelstra*, 46 Wn. (2d) 776, 285 P. (2d) 564 (1955); RCW 46.60.190 [*cf.* Rem. Rev. Stat., Vol. 7A, § 6360-92]. From the evidence outlined, the jury could conclude that the respondent was negligent in not seeing and yielding the right of way to the Queen car and that such negligence was *a* proximate cause of the resulting collision. The question of any negligence on the part of appellant's host-driver need not be considered, since the rule is well settled in this state

that the negligence, if any, of a host-driver is not imputed to his guest and would not, therefore, bar his right of recovery. See *Watson v. Northern Pac. R. Co.*, 37 Wn. (2d) 374, 223 P. (2d) 1057 (1950); *Boyle v. Lewis*, 30 Wn. (2d) 665, 193 P. (2d) 332 (1948); *Winston v. Bacon*, 8 Wn. (2d) 216, 111 P. (2d) 764 (1941). See, also, *Rutherford v. Deur,* 46 Wn. (2d) 435, 282 P. (2d) 281 (1955).

The respondent's affirmative defense that the appellant was guilty of contributory negligence in riding with a driver who he knew, or should have known, was intoxicated, and without remonstrating against his speed and recklessness, was not passed upon by the trial court in view of its disposition of the case. Neither was this considered by the majority in this court, it having affirmed the trial court's judgment of dismissal. However, the position taken in this dissent now makes it necessary that this defense be considered. The defense is to be distinguished from and not confused with "imputed negligence." In *Rutherford v. Deur, supra,* we said:

" . . . *The duty of a guest is prescribed in Bauer v. Tougaw,* 128 Wash. 654, 224 Pac. 20, in which we said:

" 'The rule applicable to this situation is that if the plaintiff, in the exercise of due and ordinary care, such as would be exercised by a reasonably prudent and cautious man, saw, or should have seen, that the driver of the car was conducting himself in a negligent manner, and if, under those circumstances, in the exercise of due and ordinary care, a reasonably prudent and cautious man would have warned or cautioned or attempted to persuade the driver from his reckless conduct and drive his car in a careful and prudent manner, and failed to give such warning or caution or to make such attempt, and such failure caused or contributed to the collision, then the passenger would be guilty of contributory negligence which would bar his recovery.' " (Italics ours.)

Whether the appellant, in the instant case, exercised the care required under the circumstances is a question of fact to be determined by a jury and, therefore, cannot properly be considered by this court as a possible ground for sustaining the judgment of the trial court.

While it may be admitted that an examination of the record has revealed substantial evidence to support the respondent's contentions and the judgment entered, this court should nevertheless, by applying the rules previously stated for testing the sufficiency of appellant's evidence to take his case to the jury, reverse the judgment of the trial court and remand the cause with instructions to grant a new trial.

ROSELLINI and OTT, JJ., concur with HUNTER, J.

March 19, 1959. Petition for rehearing denied.

