[No. 31129. Department One. November 7, 1949.]

GEORGE PASERO, *Respondent,* v. TACOMA TRANSIT COMPANY, *Appellant.*[1]

[1]Reported in 211 P. (2d) 160.

*Reuben C. Carlson,* for appellant.

*Edwin R. Johnson,* for respondent.

GRADY, J.—This action was instituted by George Pasero against the Tacoma Transit Company to recover damages to his person and property arising out of a collision between the automobile he was driving and a bus operated by the defendant. The case was tried before the court and a jury. The plaintiff was awarded a verdict. The court denied motions for judgment notwithstanding the verdict and a new trial and entered a judgment. The defendant has appealed.

The complaint alleged negligence in several particulars, charged the defendant with having so operated its bus as to deceive plaintiff, and invoked the second phase of the doctrine of last clear chance. The defendant denied that its driver was negligent, alleged that plaintiff was guilty of contributory negligence, and made a counterclaim for damages. We shall hereinafter refer to the parties as respondent and appellant.

The appellant assigns as error the giving of instructions on the doctrine of last clear chance and the theory of deception; also the refusal of the court to grant challenges made to the sufficiency of the evidence, the refusal of the court to grant a new trial because of the admission of certain testimony, and the verdict being so excessive as to indicate passion and prejudice on the part of the jury. In considering all of the assignments of error, except the latter two

grounds, we shall follow the rule requiring us to consider only that evidence supporting the claims of respondent and the reasonable and proper inference to be drawn therefrom and view all of the same in a light most favorable to respondent.

The evidence most favorable to respondent is as follows: Junett street in the city of Tacoma, the traveled portion of which is thirty feet in width, runs in a northerly and southerly direction. This street is intersected at right angles by south 70th street, running in an easterly and westerly direction, the traveled portion of which is thirty feet in width.

On the occasion in question, the respondent was driving an automobile in an easterly direction on south 70th street, and at all times was on his right hand side of the center of the street. The bus of the appellant was being driven northerly on Junett street. The southwest corner of the intersection had an obstructed view. Neither street was an arterial highway, nor had marked center lines. The driver of the bus was the favored driver.

When the respondent was fifteen feet from the intersection, he looked to his right. The bus was approximately one hundred fifty feet from the intersection and on its right side of the street. The respondent was then driving at the rate of ten miles per hour. He then looked to his left and then glanced back to his right. The bus was then fifty feet from the intersection and traveling at a speed of forty-five to fifty miles an hour along the middle of Junett street. Respondent stopped the automobile three or four feet west of the center of the intersection. The bus without swerving or changing speed contacted the front end of the automobile. The automobile was moved by the impact to a point approximately fifty feet north of the intersection and the bus came to rest about 105 feet north of the intersection against a house on the east side of Junett street.

There is no direct evidence as to the lapse of time between events as they are above set forth. In so far as it becomes necessary to consider time elements, the known factor that an object moves in feet per second $\frac{5280}{3600} \times$ MPH may be used.

There is other evidence in the record as to estimated speeds and distances, and to the extent they are favorable to the contentions of respondent we have considered them.

In arriving at our conclusion with reference to the applicability of the doctrine of last clear chance, we have in mind that, when testifying as to distances and speeds, the witnesses necessarily made estimates.

The question of whether either phase of the doctrine of last clear chance is applicable in a given case is a question of law for the court. *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371; *Shultes v. Halpin,* 33 Wn. (2d) 294, 205 P. (2d) 1201. The trial court concluded that the second phase of the doctrine upon which the complaint was based was applicable and gave an instruction thereon. The appellant does not question the correctness of the instruction as a statement of the law on the subject, but contends that the instruction should not have been given.

In order to apply the second phase of the doctrine of last clear chance to this case, it must appear that any negligence on the part of respondent had terminated, that he was in a position of peril from which he could not by exercise of reasonable care have extricated himself, and that the driver of the bus should have seen such peril and appreciated it in time so that he could, by the exercise of reasonable care, have avoided the collision.

The doctrine of last clear chance contemplates a last *clear* chance, not a last *possible* chance. This distinction has sometimes been overlooked. Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury. There must be an appreciable interval of time intervening between a collision and the moment when the driver of an automobile has knowledge or notice of the danger in which the other party has been placed. *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106; *Rettig v. Coca-Cola Bottling Co.,* 22 Wn. (2d) 572, 156 P. (2d) 914; *Shultes v. Halpin, supra.*

Viewing the transaction in its most favorable light to the respondent, we reach the conclusion that the time elapsing between the stopping of the automobile and the time when the driver of the bus should have seen him and his peril was so short as to make the doctrine of last clear chance inapplicable. Under respondent's version of the facts, his coming to a stop and the collision were almost simultaneous. If we accept the testimony of the bus driver that the bus was traveling at eighteen miles per hour, there was scarcely a second of time between the termination of the respondent's negligence and the collision. In neither case would there have been a *clear* chance. The instruction should not have been given.

In *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, we decided that the general rule was that a disfavored driver on a simultaneous approach to an intersection has the duty to yield the right of way to the favored driver, unless—

"(4) The driver on the left assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

The appellant complains because the court applied the foregoing limitation of the general rule by giving to the jury the following instruction:

"You are instructed that if you find from the evidence that the plaintiff, the disfavored party in this case, had an opportunity to observe and estimate the situation at a point where the disfavored party, the plaintiff, could see or reasonably decide whether he could proceed into the intersection with a reasonable margin of safety with reference to the approach of the defendant's vehicle and actually did so and was deceived by some conduct of the defendant bus driver which lead the disfavored driver to believe he could proceed within a reasonable margin of safety, then you must find that the plaintiff was warranted in going forward into the intersection without being guilty of negligence."

The theory of deception has entered into the intersection cases as an element to be considered in justification of the belief on the part of a disfavored driver that there was a sufficient margin of safety to enable him to proceed into and cross an intersection ahead of the oncoming traffic. If deception exists, then it has an important bearing upon the question of contributory negligence. If it does not exist, there still may remain the question of contributory negligence to consider. The two ideas operate together. Deception contemplates that there has been some conduct on the part of the favored driver, and of which the disfavored driver is unaware, which, in the light of the collision, demonstrates there was an insufficient margin of safety. If the disfavored driver was, or should have been, aware of the factor or factors which cause deception, then he cannot be heard to say he was deceived, as such would not be the fact.

In each case where deception is claimed, the court must determine whether to instruct the jury on the subject. A disfavored driver, when charged with contributory negligence in not yielding the right of way to the favored driver, is entitled to have such an instruction given if the trial court can say from the evidence that reasonable minds might differ as to whether or not he was actually deceived. *Gavin v. Everton,* 19 Wn. (2d) 785, 144 P. (2d) 735.

The respondent was aware of the distance the bus was from the intersection, its position on the street, and its approach. We find nothing in his testimony from which it can be said that he was deceived by the speed the bus was traveling when he first saw it. The instruction on the subject of deception should not have been given. *Bowen v. Odland,* 200 Wash. 257, 93 P. (2d) 366; *Cramer v. Bock,* 21 Wn. (2d) 13, 149 P. (2d) 525; *Plenderlieth v. McGuire,* 27 Wn. (2d) 841, 180 P. (2d) 808.

The appellant contends that the evidence establishes that respondent was guilty of contributory negligence as a matter of law, in that he, being the disfavored driver, did not yield the right of way to the driver of appellant's bus.

When the respondent approached sufficiently near the west entrance to the intersection to enable him to observe traffic from the south, he had then to determine if there was any approaching traffic, and, if so, from the distance it was from the intersection and the rate of speed at which it was traveling if there was a sufficient margin of safety as would enable him to enter and cross in safety. The respondent saw the approaching bus and concluded he had such a margin of safety, but after he looked to his left and then to his right he discovered he was in error and brought the automobile to a stop. There was a dispute in the testimony whether the automobile struck the side of the bus or the front corner of the bus struck the automobile. The evidence does not indicate that respondent heedlessly entered a zone of danger of which he should have been fully aware, or was engaged in a race for the intersection. We are of the opinion that the questions of negligence of the drivers of the respective vehicles and of proximate cause of the collision were for the jury to determine, and that the court properly denied the motions to dismiss the action.

The appellant urges that the court erred in overruling the objection of appellant to the following testimony:

"Q. Now, can you tell from your observation of the car as you saw it, tell which direction the metal on that car is moved? A. I would say that the metal on the car was moved from right to left. Q. Has there been any or was there any movement of the metal of the car from front to back? A. The car appears to not have any backward movement. The blunt of the force went from left to right. Q. The answer that you have just made, is that from your observation of the damage to the metal on the front of the car as you saw the car? A. That is right."

The contention of the appellant is that, inasmuch as there was a sharp issue on whether the bus hit the respondent's car or whether respondent ran into the side of the bus, the testimony was highly prejudicial; that this was expert testimony upon a subject that was for the jury to determine from the facts of the case without the aid of any opinion. We are not in accord with the view of appellant that the

witness was called upon to give expert testimony. The jury did not see the damaged vehicle. The witness had examined the automobile after the collision and saw the effect of the impact. He merely told the jury what he saw—that the metal had moved and the direction of the movement. This was a factual matter and was both relevant and material.

On the question of excessive damages, the appellant contends that the award of seven thousand five hundred dollars indicates such a degree of passion and prejudice on the part of the jury that such feelings permeated its approach to the merits of the case and prevented appellant from having a fair trial, and that the reduction made by the court was not a cure of the error. We need not pass upon the question, as we have concluded to direct a new trial upon other grounds. As to the amount of the original award, we make no comment. By reason of lapse of time, the jury on the second trial will have a better opportunity to determine the extent of the disability of respondent and the permanency of injuries.

The judgment is reversed, and the cause remanded for a new trial.

SIMPSON, C. J., SCHWELLENBACH, and DONWORTH, JJ., concur.

HILL, J. (concurring)—I concur in the result. On no theory of the case was the doctrine of last clear chance applicable. On respondent's theory that he stopped west of the center line of Junett street, there was no contributory negligence, hence no reason for a last clear chance instruction, and the trial court instructed that, if respondent stopped west of that center line, he was entitled to recover. On appellant's theory that respondent had crossed the center line of Junett street to the east side thereof, the time between the respondent's act of negligence and the collision was too short, as the majority opinion points out, for there to have been a last clear chance on the part of the appellant to avoid the collision.

I disagree with the majority only on the instruction as to deception. If there was nothing about the operation of the bus when the respondent first saw it to make him conscious of the fact that it was exceeding the speed limit, he had a right to rely upon the assumption that appellant was not exceeding and would not exceed the speed limit. If the appellant was in fact exceeding the speed limit, the respondent was deceived.

The matter of deception in such cases is discussed at some length in *Plenderlieth v. McGuire*, 27 Wn. (2d) 841, 847-850, 180 P. (2d) 808. It is there pointed out that the question of deceit will be presented to the jury (1) when there is evidence that the favored driver increased his speed after the disfavored driver first saw him, or (2) when it appears from the testimony that there was nothing to indicate that the favored driver was traveling at a speed in excess of the legal limit when first seen by the disfavored driver. This case seems to me to fall into the second category, and I believe that an instruction on deceit was proper, although the one given could well have been more specific as to what would constitute deception.