[No. 34790.   Department Two.   January 15, 1959.]

JAMES NELSON, *Appellant*, v. ALEX MOLINA, *Respondent.*[1]

[1]Reported in 334 P. (2d) 170.

*Zane B. Johnson*, for appellant.

*Stuart K. Nielsen* and *Martin, Shorts & Bever*, for respondent.

HILL, J.—We are here concerned with an automobile collision that occurred shortly after a right turn made onto an arterial highway.

The principal question presented is whether the trial court, under the facts in this case, should have applied, as a matter of law, the rules applicable to intersection collisions (RCW 46.60.170) and thus should have held the disfavored driver to have been contributorily negligent. The trial court's answer, properly given, we think, was no.

The undisputed facts are: Primary state highway No. 5 M (also referred to as the East Valley highway) is an ar-

terial; the cement surfaced portion thereof being twenty feet in width with shoulders on both sides. About two miles north of Kent there is a "T" intersection with O'Brien road (not an arterial) coming from the west. Highway No. 5 M runs north and south in virtually a straight line for at least a mile on either side of the O'Brien road intersection.

About 9:30 p. m., December 4, 1956, James Nelson approached this intersection from the north on highway No. 5 M, driving a new 1957 Dodge. Alex Molina approached it from the west on the O'Brien road, driving a borrowed, 1938-Chevrolet pickup truck. Molina made a right turn onto the arterial and proceeded south ahead of the Nelson car. After he had proceeded beyond the intersection and at least sixty feet south from the center of the O'Brien road, the truck was struck in the rear by the Nelson car. Nelson had seen the pickup come onto the highway, and, intending to pass it, he turned left into the north-bound lane of highway No. 5 M; but, seeing a car approaching in that lane, he turned back into his own lane and applied his brakes. He left skidmarks extending for approximately two hundred and nineteen feet north of the point of impact, and hit the pickup so hard that it shattered the tongue-and-groove flooring on the bed of the pickup and scattered it about the highway, knocking the truck itself off the highway. It landed in a ditch at a point almost a hundred feet south of O'Brien road. It had no value after the collision except as junk. Nelson's Dodge was damaged to the extent of more than fifteen hundred dollars.

Nelson commenced an action against Molina for damages to his Dodge. Molina cross-complained, asking damages for the destruction of the borrowed Chevrolet and for his own personal injuries.

The facts in dispute were the speed at which Nelson was driving, his distance from the intersection when Molina drove into it and made his right turn, and whether Molina stopped before entering the intersection.

Nelson testified that he was driving between fifty and sixty miles per hour (legal limit was fifty miles per hour), and that he was something like sixty feet from the intersec-

tion when Molina entered the arterial. He doesn't believe that Molina stopped before coming onto the arterial. He argues that in turning first to his left in an effort to pass, which was not possible, then turning back into his own lane and putting on his brakes, he did everything possible to avoid a collision.

It was and is his theory that he and Molina were "simultaneously approaching a given point within the intersection," within the purview of RCW 46.60.170, which reads:

"Right of way at arterial intersection. The operator of a vehicle shall stop as required by law at the entrance to any intersection with an arterial public highway, and having stopped shall look out for and give right of way to any vehicles upon the arterial highway simultaneously approaching a given point within the intersection, whether or not his vehicle first reaches and enters the intersection: . . . [. . . 1937 c 189 § 90; RRS § 6360-90.]"

It is, of course, his theory that Molina was negligent in failing to yield the right of way.

Molina, on the other hand, takes the position that this was not an intersection case; that he had been on the arterial for seven or eight seconds before he was hit, had traveled a hundred feet from where he entered the arterial before the collision occurred, and that the rule applicable to "overtaking" vehicles applied; *i.e.*, RCW 46.60.040, which so far as here applicable reads:

"Overtaking and passing another vehicle—Requirements —Sounding horn. Any person driving a vehicle upon a public highway of this state and overtaking another vehicle proceeding in the same direction shall pass to the left of such overtaken vehicle, but it shall be unlawful for any person to pass a vehicle overtaken unless he has a clear and unobstructed view ahead for a distance sufficient for safe passing, all factors considered.

". . .

". . . [1937 c 189 § 77; RRS § 6360-77.]"

Supporting his position was his own testimony that the headlights of the Nelson car were a half mile away when he stopped for the intersection and looked north. The driver of the north-bound car (which car made it impossible for the

Nelson car to pass the Molina pickup truck) testified that the Nelson car could have been two blocks from the intersection when Molina's pickup truck entered it. The undisputed physical facts concerning the length of the skid and the force of the impact at the end of that skid could lead to an inference of much greater speed than Nelson's estimate.

The trial court submitted both theories to the jury, and the jury brought in a verdict of forty-five hundred dollars for Molina on this cross-complaint. From the judgment entered on the verdict Nelson appeals.

Nelson urges that his motion for a directed verdict and for judgment n.o.v. should have been granted because it is undisputed that Molina, the disfavored driver if the intersection rule applied, did not yield the right of way, and his failure so to do caused the collision.

■ If a disfavored driver enters an intersection at such a time and in such a way as to produce an emergency situation in which the favored driver is unable, in the exercise of reasonable skill and judgment to avoid a collision, the disfavored driver's failure to yield the right of way at the intersection would constitute negligence *per se* (*Miller v. Asbury* (1942), 13 Wn. (2d) 533, 125 P. (2d) 652), even though the resultant collision occurs outside the bounds of the intersection. *Bos v. Dufault* (1953), 42 Wn. (2d) 641, 257 P. (2d) 775; *Milne v. Seattle* (1944), 20 Wn. (2d) 30, 145 P. (2d) 888; *Rutger v. Walken* (1943), 19 Wn. (2d) 681, 143 P. (2d) 866; *Hook v. Kirby* (1933), 175 Wash. 352, 27 P. (2d) 567.

■ Under the facts as stated, RCW 46.60.170 (quoted *supra*) could apply, and the rights and liabilities of the parties would then depend upon who had the right of way at the intersection.

■ In the present case the testimony of a disinterested witness places the favored driver (Nelson) so far away from the intersection when the disfavored driver (Molina) entered the arterial that a reasonably prudent and cautious man could have believed that he and the favored driver were not simultaneously approaching a given point within

the intersection, and that he could with safety proceed to enter the arterial and travel upon it.

■ Under such circumstances, the disfavored driver entering the arterial had the right to assume, until he knew or should have known to the contrary, that the driver on the arterial would obey the traffic laws and proceed at a lawful speed. *Peerless Food Products Co. v. Barrows* (1957), 49 Wn. (2d) 879, 307 P. (2d) 882.

■■ We are called upon to decide whether, as the appellant Nelson contends, Molina, as a matter of law, entered the intersection in violation of RCW 46.60.170 and was responsible for the collision. We answer that question in the negative. It was at least a question for the jury under the testimony as we have outlined it. The issues of negligence, contributory negligence, and of proximate cause are, in such a situation, questions of fact. *Gibson v. Spokane United Railways* (1938), 197 Wash. 58, 84 P. (2d) 349; *Pyle v. Wilbert* (1940), 2 Wn. (2d) 429, 98 P. (2d) 664. The jury found, and with abundant evidence to sustain the finding, that if Nelson had been proceeding lawfully, Molina had a reasonable margin of safety in proceeding onto the arterial highway, and that the collision would not have occurred but for Nelson's excessive speed. *Peerless Food Products Co. v. Barrows, supra.*

The trial court properly denied the motion for a directed verdict and for judgment n.o.v.

■ It follows that there is no merit in the assignment of error directed against the court's instruction, based upon RCW 46.60.040 (quoted *supra*). Patently, if Molina was lawfully upon the arterial (as the jury could, and did, find) when the collision occurred, the rights and liabilities are those of following and preceding drivers, and the statute relating to an overtaking driver was applicable.

It is contended that a new trial should have been granted on the grounds that the damages awarded by the jury were so excessive as unmistakably to indicate that the verdict must have been the result of passion and prejudice. See Rule 16 (5) of the General Rules of the Superior Courts.

■ Special damages were established in the sum of $305.75, which, in addition to a doctor's bill and a hospital bill, included $190 for the 1938 pickup truck. There was testimony of other expenditures in consequence of the collision, but not as to specific amounts.

A doctor testified that, as a result of the collision, Molina received a severe blow to his head, that his scalp was cut open down to the bone, that there was considerable pain and suffering. After leaving the hospital, he was from three weeks to a month at the home of a friend. She testified that he was "very weak, very dizzy . . . had a poor appetite and he had to lay quite still most of the time."

The injury caused severe headaches and dizziness, which had continued to the time of the trial. The doctor testified that from the continuance of such headaches and dizziness, it could be inferred that some swelling had taken place on the inside of the skull or in the brain tissue

". . . and that in all probability he will have to learn to live the rest of his life with some degree of dizziness which will be prompted by quick motion or a quick turning motion. . . . Any sudden change of position of the head, either bending, stooping, straining, or even rolling over . . . will initiate it."

Molina has only a fourth-grade education, received in his native Philippine Islands. He has a ten-acre truck farm; he formerly worked as much as fifteen hours a day before his accident, and, now, if he works ten he is exhausted. There is here no claim of a complete permanent disability; however, the recurring dizziness is, unquestionably, a handicap in earning his livelihood and prevents him from doing certain work which he was formerly accustomed to doing "like tractoring, lifting those irrigation pipes, and loading this heavy crate, shipping, lettuce crate, cauliflower crate."

The verdict cannot be said to be so excessive as unmistakably to indicate that it must have been the result of passion and prejudice.

The judgment appealed from is affirmed.

WEAVER, C. J., DONWORTH, ROSELLINI, and FOSTER, JJ., concur.