[No. 34925.   Department Two.   April 23, 1959.]

MALCOLM J. KING, *Appellant*, v. JAMES M. MOLTHAN *et al.*, *Respondents.*[1]

[1]Reported in 338 P. (2d) 338.

*Hullin & Ehrlichman* and *James B. Wilson,* for appellant.

*Yothers, Luckerath & O'Dea,* for respondents.

HILL, J.—This is an intersection-collision case, wherein the favored driver appeals from the judgment against him. The issues are factual: (1) was the favored driver negligent; (2) was the disfavored driver deceived by the speed of the favored driver.

Eastlake is an arterial street in the city of Seattle which, at its intersection with Roy street, runs approximately north and south and carries four lanes of traffic—two each way.

Roy is a nonarterial, east-west street carrying two lanes of traffic where it intersects Eastlake.

At the time of the collision (8:15 a. m.), there was heavy, southbound traffic on Eastlake towards downtown Seattle. There were stop signs on Roy, but no traffic lights controlling the intersection. There was a marked crosswalk across Eastlake along the north side of the intersection.

The defendant, James M. Molthan, hereafter referred to as the disfavored driver, was traveling westward on Roy in his 1955 Nash Metropolitan, and came to a stop on the east side of Eastlake awaiting a chance to cross the intersection and continue on his westward way. As he waited, the three-way traffic light (a short block to the south), which controlled the intersection of Eastlake, Lakeview boulevard, and Mercer street, turned red for Eastlake traffic; the northbound lanes on Eastlake cleared quickly; the traffic on the inside, southbound lane backed up from Mercer street practically to the south line of the Roy street intersection. A car traveling in the inside, southbound lane stopped north of Roy street at the north line of the crosswalk; and, as it stopped, its driver waved to the disfavored driver to come on across Eastlake; the intersection being clear, he proceeded across the intersection gathering speed as he went.

The plaintiff, Malcolm J. King, hereafter called the favored driver, was driving his 1952 Lincoln southbound— in the outside or curb lane of Eastlake—approaching the Roy street intersection and following the nearest automobile in front of him by an estimated one hundred and fifty feet.

The disfavored driver's automobile—after crossing the two northbound lanes and passing in front of the row of waiting automobiles in the inside, southbound lane—was struck on the right side by the favored driver's automobile while crossing the outside, southbound lane. Damages were sustained by both automobiles, and some personal injuries were suffered by the disfavored driver.

The favored driver brought suit against the disfavored driver, alleging negligence in failure to yield the right of way (see RCW 46.60.170). The disfavored driver denied the alleged negligence, and by answer and cross-complaint alleged that the favored driver was negligent in traveling at an excessive speed and passing the stopped automobiles in the inside lane without keeping a proper lookout for possible cross traffic at the Roy street intersection.

The trial court, sitting without a jury, found that the disfavored driver had acted as a reasonably careful and prudent driver and had been deceived by the speed of the favored driver's automobile, and that the sole and proximate cause of the collision was the negligence of the favored driver. From a judgment entered against the favored driver on the disfavored driver's cross-complaint, the favored driver appeals.

The only issues on this appeal are whether the evidence clearly preponderates against the findings of fact, made by the trial court, to the effect that the favored driver was negligent and that the disfavored driver was deceived by the actions of the favored driver. Unless it does so preponderate, the findings will, of course, not be disturbed on appeal.

Finding of fact No. III said, in part,

" . . . That the defendant and cross-complainant [disfavored driver] proceeded lawfully across the intersection of Roy and Eastlake and to a point approximately in the center of said intersection where he saw the plaintiff's car from a point at which he could see and reasonably decide whether or not he could proceed across the intersection with a fair margin of safety. That Molthan [disfavored driver] had his car under control so that he could make a reason-

able decision whether to stop, to veer to left or to proceed. That Molthan [disfavored driver] at that time had sufficient time to proceed across the intersection if he had not been deceived by the speed of the plaintiff [favored driver]."

Finding of fact No. IV said, in part,

"That the plaintiff [favored driver] was traveling at a speed of about thirty miles per hour as he approached the intersection; that the plaintiff [favored driver] saw the line of cars waiting at the intersection; that he proceeded to pass the line of cars on the right hand side and approached the intersection without exercising reasonable care. . .. ."

Finding of fact No. V said:

"That defendant and cross-complainant [disfavored driver], as a reasonable, careful and prudent man, did everything that reasonably could have been expected to be done. That the defendant and cross-complainant [disfavored driver], as a reasonable, careful and prudent man, was justified in believing he could safely cross the intersection had the plaintiff [favored driver] not been proceeding at an excessive rate of speed. That Mr. Molthan [disfavored driver] was capable at that critical point of making his decision to continue across and that his election was one that a reasonably careful and prudent person would have made."

The evidence clearly preponderates against findings No. III and No. V, the latter being little more than an argumentative restatement of finding No. III.

The basic facts are not in dispute. Because of the line of waiting automobiles in the inside, southbound lane on Eastlake both parties were agreed that their vision of each other had been blocked until a second before the collision occurred.

The Nash Metropolitan was approximately ten and one-half feet long; the highest point of the body (excluding the convertible top) being thirty-eight inches from the ground; and the driver's eye level being approximately forty-two to forty-four inches from the ground; it was English-made, and substantially smaller than any standard American make of automobile at the time of the accident. The size of the Nash Metropolitan contributed to the inability of each driver to see the other; but it appears that vision would have

been blocked even had both automobiles been of standard size.

The favored driver estimated himself. to have been only two to three car-lengths away when he saw the disfavored driver, who testified that he saw the favored driver, within a second of the impact, at a distance of some seventy-five to one-hundred feet, or perhaps a hundred and twenty feet away; and, therefore, he assumed that he had a reasonable margin of safety in which to cross and was deceived by the favored driver's excessive speed.

The disfavored driver's testimony on this point would suggest a speed of from fifty to eighty miles an hour by the favored driver, which is not consistent with any of the other circumstances of the case, or with the trial court's finding of a speed of "about thirty miles per hour."

The favored driver's automobile skidded only a very few feet, if any, before the impact and stopped at the point of impact after hitting the disfavored driver's car broadside. The trial court's finding that the favored driver was moving at "about thirty miles per hour" is within the range of the evidence—a disinterested witness having testified to forty-five miles per hour, and his own testimony being that he was going twenty miles per hour.

We have no difficulty in following the trial court's conclusion that the favored driver, even though he was traveling within the thirty-mile-an-hour speed limit, was negligent in failing to keep a proper lookout for traffic, vehicular or pedestrian, that might be crossing at Roy street when his view of that street was practically completely obstructed by a line of waiting cars in the lane to his left. It is clear that the posted speed limit may be an excessive speed under certain circumstances. RCW 46.48.010; *Owens v. Seattle* (1956), 49 Wn. (2d) 187, 299 P. (2d) 560; *Ashley v. Ensley* (1954), 44 Wn. (2d) 74, 265 P. (2d) 829; *White v. Fenner* (1943), 16 Wn. (2d) 226, 133 P. (2d) 270; *Walker v. Butterworth* (1922), 122 Wash. 412, 210 Pac. 813.

We agree with the trial court that the favored driv-

er's negligence was a proximate cause of the collision and bars his recovery.

On the other hand, it is apparent that both automobiles were simultaneously approaching a given point within the intersection and that the disfavored driver failed to yield the right of way, as the statute (RCW 46.60.170) requires him to do. His failure to yield the right of way was clearly a proximate cause of the collision.

The disfavored driver testified that he moved across the intersection, keeping his foot on the throttle, and did not slow down or stop as he crossed the center line of Eastlake and moved in front of the waiting cars in the inside, southbound lane. He further testified that when he first saw the favored driver (no more than a second before the impact) he was traveling ten miles an hour and had come to a position where the front wheels of his automobile had reached the marker line dividing the inside, southbound lane from the outside lane in which the favored driver was traveling. He conceded that he could not, taking into account the reaction time necessary to get his foot off the throttle and onto the brake, have stopped in less than twelve or thirteen feet. He did not attempt to stop at this point, but proceeded across the outside lane in which the collision occurred.

It is clear that at the time the disfavored driver first saw the favored driver, he could not have stopped and let the favored driver go by even if he had wanted to; he was committed to crossing the favored driver's lane of traffic before he was actually able to see what was in it. In this factual situation the evidence preponderates against any finding that the disfavored driver was not negligent. On this basis, findings No. III and No. V, *supra,* are necessarily erroneous.

The disfavored driver seeks to excuse his failure to yield the right of way by one of the rules laid down in *Martin v. Hadenfeldt* (1930), 157 Wash. 563, 289 Pac. 533, which indicates that the disfavored driver may recover if he assumes and meets the burden of producing evidence that will establish that the favored driver so wrongfully, negligently, or

unlawfully operated his car as to deceive a reasonably prudent driver and warrant him in going forward upon the assumption that he had the right to proceed. (We have, obviously, paraphrased the fourth of the rules laid down in *Martin v. Hadenfeldt, supra,* to adapt it to the present arterial-nonarterial situation.)

An analysis of the evidence makes it apparent that it is impossible to accept the trial court's finding that the favored driver was traveling at about thirty miles an hour (even though we may agree that it was too fast under the circumstances), and, at the same time, find any circumstances that would deceive a reasonably prudent driver and warrant him in going forward upon the assumption that he had the right to proceed.

We do not hold that because the favored driver was traveling "about thirty miles per hour" there can be no deception. A favored driver might, contrary to appellant's contention, deceive a disfavored driver without exceeding the speed limit; but we do hold that the evidence clearly establishes (1) that after the disfavored driver saw the favored driver, he never had any opportunity to make a choice of whether to proceed or stop (and the finding that he did is without support in the evidence); (2) that if the favored driver was traveling "about thirty miles per hour," and was seen by the disfavored driver only a second before the impact (and the finding is supported by the evidence), the favored driver must have been approximately forty-five feet from the intersection when the disfavored driver first saw him, and any reasonably prudent and cautious disfavored driver who could have stopped would have done so.

One is not deceived by that which one does not see. *Smith v. Laughlin* (1958), 51 Wn. (2d) 740, 321 P. (2d) 907; *Hauswirth v. Pom-Arleau* (1941), 11 Wn. (2d) 354, 119 P. (2d) 674; see *Martin v. Hadenfeldt, supra.* If one sees the favored vehicle only an instant before the collision, there is, again, no deception in the legal sense. *Zorich v. Billingsley* (1958), 52 Wn. (2d) 138, 324 P. (2d) 255. In such a case any deception that exists in fact cannot be the proxi-

mate cause of the collision that ensues. Furthermore, an obstructed vision of the favored vehicle cannot create a deception. *Shultes v. Halpin* (1949), 33 Wn. (2d) 294, 205 P. (2d) 1201. Deception presupposes a situation where the disfavored driver sees the favored vehicle, and has the opportunity to make a choice. *Hauswirth v. Pom-Arleau, supra.*

We are satisfied that the evidence clearly preponderates against the trial court's finding of deception, and it follows that the disfavored driver's negligence, in failing to yield the right of way, was a proximate cause of the collision and bars his recovery.

The judgment, awarding damages to James M. Molthan, the disfavored driver, upon his cross-complaint, is reversed; and the trial court is instructed to enter a judgment dismissing both the complaint of the favored driver and the cross-complaint of the disfavored driver.

While the appellant has not prevailed on all issues, he has prevailed on the major issue and is entitled to recover his costs on this appeal, except that the amount allowed for the statement of facts shall be computed on the basis of 178 pages instead of 190 pages, there being 12 pages of medical testimony which had no conceivable bearing upon the issues presented on this appeal, and which the successful appellant has chosen to bring to this court. We see no reason why a respondent whose judgment is reversed should have to pay for an unnecessarily long record.

FINLEY and ROSELLINI, JJ., concur.

FOSTER, J. (concurring in the result)—I concur in the result because there is no evidence to support the finding that the disfavored driver was deceived. This clearly appears in the court's opinion in which it is said "The basic facts are not in dispute," but I cannot agree with the court's statement that the only question is "whether the evidence clearly preponderates against the findings of fact," which implies that this court possesses power to retry factual disputes. It does not. If the court persists in retrying factual disputes, lawyers will be justified in appealing cases which

involve nothing more, although the legislature in 1957 repealed the act of 1893 which authorized a trial *de novo* upon factual disputes. Laws of 1957, chapter 7, § 10 (27), p. 25, 26. My views were stated more fully in my dissent in *Crofton v. Bargreen*, 53 Wn. (2d) 243, 254, 332 P. (2d) 1081.

WEAVER, C. J., concurs with FOSTER, J.