[No. 38770.   Department Two.   August 17, 1967.]

MAX TOBIAS, *Plaintiff*, v. EDDIE K. RAINWATER, *Appellant*, EDGAR BATISTE *et al.*, *Respondents.**

*Reported in 431 P.2d 156.

*James E. McIver* and *William Merchant Pease* (of *Walthew, Warner & Keefe*), for appellant.

*Reed, McClure & Moceri* and *Thomas W. Huber*, for respondents.

DONWORTH, J.—This action was originally commenced by plaintiff, Max Tobias, against appellant for property damage to his automobile resulting from an accident which occurred at the intersection of 20th Avenue and East Olive Street with East Madison Street in Seattle.[1] The complaint alleged that the accident, in which the automobile driven by appellant and one driven by plaintiff Tobias, collided, was the result of the combined negligence of appellant and one Batiste,[2] respondent herein.

Appellant denied that he was negligent, and cross-complained against respondent for personal injuries and property damage, alleging that respondent was negligent in failing to look out for and yield the right of way, and that such negligence was the proximate cause of the accident. Respondent asserted that any harm suffered by appellant was the result of his own negligence.

A voluntary nonsuit was entered on behalf of plaintiff, Tobias, and the case proceeded to trial upon the cross-

---

[1] Exhibit 11 is incorporated herein for illustrative purposes only. It presents a rough drawing of the intersection involved, and the parties admit that it is not drawn to scale, and that it may not be wholly accurate in other respects.

[2] Edgar Batiste will be referred to hereafter as the sole respondent.

complaint of appellant. The court, at the conclusion of the trial, entered judgment on the jury verdict for respondent, from which appellant brings this appeal.

The salient facts may be summarized as follows:

In the afternoon of Thursday, July 16, 1964, at about 4:30 or 5 p.m., appellant was proceeding east on Madison Street from 19th Avenue, where he had stopped for a red stop light, toward 20th Avenue. Madison, at this point, is a 4-lane arterial highway, sloping down from 19th Avenue. In the car with appellant was a friend, Elijah Wafer, and a man known to both, but whose name they were unable to remember.

Respondent, who had taken a friend to the grocery store and was returning to his home with the friend, was proceeding north on 20th and came to a full stop at the stop sign before entering Madison.

Plaintiff, Tobias, was traveling west on Olive, and likewise came to a full stop at the stop sign at the entrance to Madison.

Respondent testified that he looked in both directions before moving out onto Madison and saw no cars whatsoever. As he proceeded across Madison, preparatory to making a left turn onto Madison, he again looked to the left and saw appellant's automobile about four car lengths from him. He testified that he saw appellant's car swerve to

the right. He proceeded on across Madison and stopped on the far right-hand side of the street headed west.

Appellant testified that he resumed his journey after having stopped for the stop light at 19th and proceeded down Madison. When respondent's car pulled out in front of him, he jammed on his brakes and swerved to the right. In doing so, he lost control of his car and collided with the Tobias vehicle, which had remained stopped at the stop sign on Olive.

Mr. Tobias testified that, after the vehicle driven by respondent pulled out onto Madison from the stop sign, he saw appellant's automobile coming at him, put on his brakes, and braced himself.

Although there is dispute in the testimony as to the distance one can see up Madison Street from the stop sign on 20th Avenue, there was substantial evidence that the view is unobstructed at least to the stop light on 19th Avenue where that street intersects Madison. It is not disputed that appellant had stopped at this intersection before proceeding down Madison toward the point where the collision with the Tobias vehicle occurred.

There is considerable dispute, however, as to whether appellant was exceeding the speed limit of 30 miles per hour on Madison Street.

According to the testimony of appellant and his passenger, Mr. Wafer, appellant was not exceeding the speed limit. Respondent gave no estimate as to the speed of appellant's vehicle, for, according to his testimony, he viewed the oncoming automobile for only a moment before the collision.

Nor could plaintiff Tobias give an estimate of the speed of appellant's vehicle, for he, too, had only a momentary view of the car before impact.

Two disinterested witnesses, who were in the Pacific Heating Oil Company office on the corner of 20th and Olive at the time of the accident, were not permitted by the trial court to testify before the jury as to their estimate of the speed of appellant's vehicle. The trial court properly ruled that they did not have sufficient time in viewing the acci-

dent to validly estimate the speed. They did express the view, out of the presence of the jury, that appellant was traveling at a speed of up to 45 miles per hour.

█ Therefore, the jury was without testimonial evidence as to the speed of appellant's vehicle except for that of appellant himself or his passengers. However, the jury could properly consider on this question, the length of the time appellant's automobile skidded (which was testified to by the Pacific Heating Oil employees), the fact that appellant lost control of his vehicle, and the force of the impact with the Tobias vehicle and the damage caused thereby.

Therefore, for the purposes of this discussion, we shall assume that the jury decided the question of speed adversely to appellant, and treat the issues presented as if appellant were, in fact, exceeding the speed limit at the time of the accident.

In order that the discussion to follow may be placed in proper perspective, one matter must be settled at the outset. Appellant seemingly contends that this is not a case involving two vehicles "simultaneously approaching" a given point within the intersection,[3] contending that there was never a "near" collision between appellant and respondent, and that the place where the two cars passed each other was outside the intersection (*i.e.* west of it on Madison).

█ This court has, several times, held that, where two cars collide within an intersection, they are "simultaneously approaching a given point within the intersection." *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533 (1930); *Hauswirth v. Pom-Arleau,* 11 Wn.2d 354, 119 P.2d 674

---

[3]The 1965 legislature substantially altered portions of the rules of the road, and, in Laws of 1965, Ex. Ses., ch. 155, § 30, provided, in part, that: "(2) Except when directed to proceed by a police officer or traffic-control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop as required by section 50 subsection (2) of this amendatory act, and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another highway or *which is approaching so closely on said highway as to constitute an immediate hazard* during the time when such driver is moving across or within the intersection." (Italics ours.) This amendment has no application to the case at bar.

(1941); *Wilkinson v. Martin,* 56 Wn.2d 921, 349 P.2d 608 (1960). However, the converse does not necessarily follow.

In *Milne v. Seattle,* 20 Wn.2d 30, 145 P.2d 888 (1944), this court held, regarding a similar contention made by a party, that the rules of simultaneous approach were applicable to a situation where, although the collision occurred without the intersection, the train of circumstances from which the collision resulted had its origin in the situation of the drivers as they entered the intersection.

If a disfavored driver enters an intersection at such a time and in such a way as to produce an emergency situation in which the favored driver is unable, in the exercise of reasonable skill and judgment to avoid a collision, the disfavored driver's failure to yield the right of way at the intersection would constitute negligence *per se* (*Miller v. Asbury* (1942), 13 Wn. (2d) 533, 125 P. (2d) 652), even though the resultant collision occurs outside the bounds of the intersection. *Bos v. Dufault* (1953), 42 Wn. (2d) 641, 257 P. (2d) 775; *Milne v. Seattle* (1944), 20 Wn. (2d) 30, 145 P. (2d) 888; *Rutger v. Walken* (1943), 19 Wn. (2d) 681, 143 P. (2d) 866; *Hook v. Kirby* (1933), 175 Wash. 352, 27 P. (2d) 567. *Nelson v. Molina,* 53 Wn.2d 412, 416, 334 P.2d 170 (1959).

See, also, *Mitchell v. Cadwell,* 188 Wash. 257, 62 P.2d 41 (1936); *Bown v. Fleischauer,* 53 Wn.2d 419, 334 P.2d 174 (1959). Clearly, what the statute requires is that the vehicles be simultaneously *approaching* a given point in the intersection, not that they simultaneously arrive at that point.

Therefore, notwithstanding the fact that no collision occurred in the intersection between appellant and respondent, this is a "right of way" case (*i.e.* appellant and respondent were approaching a given point in the intersection) and will be treated as such. Appellant, proceeding as he was on the protected arterial highway, was the favored driver, and respondent, confronted by a stop sign, was the disfavored driver.

The statute in effect at the time of the accident, RCW 46.60.170, provided that:

The operator of a vehicle shall stop as required by law at the entrance to any intersection with an arterial public

highway, and having stopped shall look out for and give right of way to any vehicles upon the arterial highway simultaneously approaching a given point within the intersection, whether or not his vehicle first reaches and enters the intersection: *Provided,* That this section shall not apply to vehicles entering an intersection which is posted with the "Yield Right of Way" sign.

The Seattle Traffic Code, § 21.12.220, contains substantially the same requirements.

■ Thus, the obligations imposed by the statute and code upon respondent, the disfavored driver, were to: (1) stop at the entrance to the intersection; (2) having stopped, look out for vehicles upon such arterial highway simultaneously approaching a given point within the intersection, and (3) give right of way to such approaching vehicles upon the arterial highway. *Hauswirth v. Pom-Arleau, supra.* Clearly, if respondent did not comply with those obligations, and his failure was the proximate cause of the accident, he must be held negligent as a matter of law.

■ The basic rules relative to right of way (3) above were set forth in *Martin v. Hadenfeldt, supra,* as follows:

(1) All rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers.

(2) The primary duty of avoiding such accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times.

(3) If two cars collide within the intersection, then they were simultaneously approaching a given point within the intersection, within the meaning of the statute, unless—

(4) The driver on the left assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed. (p. 567)

Regarding (4) of the *Martin v. Hadenfeldt* rule, which has become known as the "deception rule," the trial court instructed the jury, in instruction No. 9, that:

The traffic ordinance of the City of Seattle provides that the operator of a vehicle shall stop as required by law at the entrance to any intersection with an arterial street, and having stopped shall look out for and give right-of-way to any vehicles upon the arterial street simultaneously approaching a given point within the intersection, whether or not his vehicle first reaches and enters the intersection. The right-of-way of the driver traveling on the arterial street, however, is not absolute, and the duty to avoid accidents at such intersections rests upon both drivers. The primary duty rests upon the driver who does not have the right-of-way.

*The above stated right-of-way rule will not apply if the driver entering the intersection produces sufficient evidence to show that the driver traveling on the arterial so wrongfully, negligently or unlawfully operated his vehicle so as to deceive the other driver, as a reasonably prudent man, into assuming that it was safe to enter the intersection.* (Italics ours.)

Appellant contends that the giving of this instruction and the submission of the issue of deception to the jury were in error. We agree.

In *Mondor v. Rhoades*, 63 Wn.2d 159, 167, 385 P.2d 722 (1963), this court undertook an extensive re-examination of the so-called deception rule. Our conclusions were stated to be that:

[T]he right of way granted to the driver on the right is a strong one and ought not to be lost in the maze of details arising from split-second computation of time and distance. But it is not an absolute. The law, like life itself, has room for few absolutes, and we are fearful of granting one here. Room must be left for *the extreme case, the case where the driver on the left is able to demonstrate that the favored driver so wrongfully and negligently operated his car as to create a deception tantamount to an entrapment,* a deception of such marked character as to lure a reasonably prudent driver into the illusion that he has a fair margin of safety in proceeding into the intersection and on through it. If the behavior of the car and driver on the right would not deceive the

reasonably prudent driver on the left to such an extent as to entrap him, then the disfavored driver has failed to yield the right of way. See *Chavers v. Ohad*, 59 Wn. (2d) 646, 369 P. (2d) 831, and the specially concurring opinion per Rosellini, J., at p. 653. (Italics ours.)

As a logical corollary to that analysis, this court has consistently held that the application of the deception rule presupposes a situation where the disfavored driver sees the favored vehicle and is deceived by the actions of the driver of that vehicle. *Golub v. Mantopoli*, 65 Wn.2d 361, 397 P.2d 433 (1964). One cannot be deceived by that which he does not see. *Smith v. Laughlin*, 51 Wn.2d 740, 321 P.2d 907 (1958); *Hauswirth v. Pom-Arleau, supra; King v. Molthan*, 54 Wn.2d 115, 338 P.2d 338 (1959). And, if one sees the favored vehicle only an instant before the collision, there is, again, no deception in the legal sense. *Golub v. Mantopoli, supra; King v. Molthan, supra.*

Contending for the application of the deception rule to the facts of the case at bar, respondent argues (1) that there was substantial evidence that appellant was speeding and that respondent looked and entered the arterial when it appeared to him to be clear; and (2) that there was no collision between respondent and appellant, so that there was a very real question as to who had the right of way.

What has been said, *supra,* page 834, disposes of respondent's second contention.

With regard to respondent's other contention, we deem it settled that excessive speed alone on the part of the favored driver is not sufficient, in and of itself, to justify the submission to the jury of the issue of deception.

In *Plenderlieth v. McGuire*, 27 Wn.2d 841, 180 P.2d 808 (1947), we recognized that certain of our earlier decisions could give rise to the inference that there could be deception based on nothing more than excessive speed. However, the case made it clear that such an inference was incorrect, and it was there held that the deception rule would not apply to a situation in which the disfavored driver saw the oncoming favored driver, and was aware of the latter's excessive speed. See, also, *Mercilliott v. Hart*, 173 Wash. 224, 22 P.2d 658 (1933), wherein we noted that under such

circumstances the disfavored driver's duty to yield would be intensified rather than diminished by the known fact of excessive speed on the part of the favored driver. In accord is *Bell v. Bennett,* 56 Wn.2d 780, 355 P.2d 331 (1960).

Two situations were set forth in *Plenderlieth, supra,* which would justify the application of the deception rule in cases involving excessive speed on the part of the favored driver. Those situations were where: (1) there is evidence that the favored driver increased his speed after the disfavored driver saw him, and (2) where it appears from the testimony that there was nothing to indicate that the favored driver was traveling at a speed in excess of the legal limit when seen by the disfavored driver.

Both situations described apply *only* in cases where the disfavored driver *actually sees* the favored driver, and *reasonably* concludes that he has ample time to traverse the intersection, having due regard to the maintenance of a fair margin of safety at all times.

Clearly, this is not the situation in the case at bar, for respondent, the disfavored driver, admittedly did not see appellant's oncoming vehicle at any time before he proceeded into the intersection.

Respondent points out, however, that this court has held that a disfavored driver who properly looks to his right, can be deceived by a clear stretch of road as well as by the deceptive manner in which a favored driver operates his vehicle, citing *Bockstruck v. Jones,* 60 Wn.2d 679, 374 P.2d 996 (1962).

In *Ward v. Zeugner,* 64 Wn.2d 570, 573, 392 P.2d 811 (1964), we said:

> We have no serious quarrel with the principle announced in the *Bockstruck* case; however, it must be recognized that it is of limited application—its applicability being confined and restricted to those situations wherein it is demonstrated by the evidence presented that the *disfavored driver, consistent with the primary duty of caution resting upon him, and consistent with the physical surroundings, carefully looked from a point of appreciable observation and could not see a negligently operated favored vehicle because of a physical obstruction upon*

*or about the roadway.* Entrapment of the disfavored driver is thus predicated upon two circumstances: (a) The favored driver's negligent operation, and (b) the concealment thereof from prudent view by an obstruction. See *Roberts v. Leahy,* 35 Wn. (2d) 648, 214 P. (2d) 673. (Italics ours.)

In short, the so-called "clear stretch of road" doctrine is applicable only where there is, in fact, a "clear" stretch of road.

This is not the situation presented in the case at bar. Here, it is undisputed that appellant stopped at the stop light on 19th Street in view of the intersection of 20th and Madison before proceeding down Madison toward the point where this accident occurred. As pointed out in *Roberts v. Leahy,* 35 Wn.2d 648, 651, 214 P.2d 673 (1950):

> When a favored vehicle is within view to the right of the disfavored vehicle it will be conclusively held that the disfavored driver actually saw what he could have seen if he had performed the duty of looking. His failure to do so is negligence as a matter of law. *Rhodes v. Johnson,* 163 Wash. 54, 299 Pac. 976; *Strouse v. Smith,* 166 Wash. 643, 8 P. (2d) 411; *Hoenig v. Kohl,* 182 Wash. 245, 46 P. (2d) 728; *Chess v. Reynolds,* 189 Wash. 547, 66 P. (2d) 297; *Hefner v. Pattee,* 1 Wn. (2d) 607, 617, 96 P. (2d) 583; *Hauswirth v. Pom-Arleau,* 11 Wn. (2d) 354, 373, 119 P. (2d) 674; *Bleiler v. Wolff,* 23 Wn. (2d) 368, 161 P. (2d) 145; *Calvert v. Seattle,* 23 Wn. (2d) 817, 162 P. (2d) 441; *Plenderlieth v. McGuire,* 27 Wn. (2d) 841, 180 P. (2d) 808; *McClellan v. Great Western Fuel Co.,* 32 Wn. (2d) 202, 201 P. (2d) 221. See, also, *Johnson v. Washington Route,* 121 Wash. 608, 209 Pac. 1100, and *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784, where many cases are cited.

*Harris v. Fiore,* 70 Wn.2d 357, 423 P.2d 63 (1967), is not inconsistent with this view, for, in that case, the *lane* into which the disfavored driver turned was, in fact, "clear" at the time he commenced his turn.

One additional argument raised by respondent is that the disfavored driver has the right to assume that the favored driver on an arterial highway will not travel in excess of the legal rate of speed, unless such disfavored driver knows

or should know that the favored driver is approaching at an excessive rate of speed, citing *Fazio v. Eglitis*, 54 Wn.2d 699, 344 P.2d 521 (1959); and *Nelson v. Molina*, 53 Wn.2d 412, 334 P.2d 170 (1959).

However, this rule is applicable only where the disfavored driver actually sees the favored driver and *justifiably* believes that the favored driver is not traveling in excess of the lawful speed limit—see *Cramer v. Bock*, 21 Wn.2d 13, 149 P.2d 525 (1944)—or where the disfavored driver, properly exercising his duty of observation, cannot see the favored driver, *i.e.* the "clear stretch of road" doctrine, discussed *infra*. It is wholly inapplicable in a case such as that at bar, wherein the disfavored driver does not see the favored driver, and where, in the exercise of reasonable care, consistent with his duties as a disfavored driver, he should have seen him.

In conclusion, appellant, the favored driver, was there to be seen. Respondent did not see him, however, until he had commenced his crossing in the path of appellant's oncoming vehicle. Under such circumstances, we hold that the deception rule was not applicable as a matter of law, notwithstanding appellant's possibly exceeding the speed limit, and it was error for the court to submit the issue of deception to the jury under the instruction given.[4] *Pasero v. Tacoma Transit Co.*, 35 Wn.2d 97, 211 P.2d 160 (1949). As stated by this court in *Cramer v. Bock*, 21 Wn.2d 13, 16, 149 P.2d 525 (1944):

> We hold to the view, and are of the opinion, that an instruction pointing out the rule relative to deception is only authorized when the evidence shows or justifies an inference that the disfavored driver was deceived by the actions of the favored driver and had reasonable grounds for going forward.

Appellant next assigns as error the giving of the trial court's instruction No. 14, which provided that:

> Every driver, whether favored or disfavored, in the exercise of reasonable care, has the duty to look out for approaching traffic.

[4]It is not intended here to approve or disapprove this instruction. But, see WPI 70.02.02.

He argues that this instruction confuses the issue and de-emphasizes the duty of the disfavored driver at a controlled intersection to look out for and give the right of way to traffic on the arterial.

█ The right of way afforded the favored driver who is proceeding on an arterial highway protected by stop signs is a strong one, *Mondor v. Rhoades, supra,* although not absolute. *Martin v. Hadenfeldt, supra; Bennett v. Karnowsky,* 24 Wn.2d 487, 166 P.2d 192 (1946). The favored driver must exercise reasonable and ordinary care for his own safety, else his recovery will be denied because of his contributory negligence. *Owens v. Kuro,* 56 Wn.2d 564, 354 P.2d 696 (1960). See, also, *Bulzomi v. Swank,* 53 Wn.2d 344, 333 P.2d 677 (1959); *Robison v. Simard,* 57 Wn.2d 850, 360 P.2d 153 (1961), and cases cited therein; and *Bauman v. Complita,* 66 Wn.2d 496, 403 P.2d 347 (1965).

But the duty resting on the disfavored driver is mandatory, *Hefner v. Pattee,* 1 Wn.2d 607, 96 P.2d 583 (1939); *Miller v. Asbury,* 13 Wn.2d 533, 125 P.2d 652 (1942).

[A] favored driver who has done nothing to confuse or deceive a disfavored driver is entitled to assume that the latter will yield the right of way. *Breithaupt v. Martin,* 153 Wash. 192, 279 Pac. 568; *Jamieson v. Taylor,* 1 Wn. (2d) 217, 95 P. (2d) 791; *Murray v. Banning,* 17 Wn. (2d) 1, 134 P. (2d) 715; *Bleiler v. Wolff,* 23 Wn. (2d) 368, 161 P. (2d) 145; *Anderson v. Kurrell,* 28 Wn. (2d) 227, 182 P. (2d) 1. The favored driver may rely upon this assumption until he becomes aware, or in the exercise of reasonable care should have become aware, that the right of way will not be yielded. *Stokoe v. Paulson,* 168 Wash. 1, 10 P. (2d) 247; *Ellestad v. Leonard,* 18 Wn. (2d) 118, 138 P. (2d) 200. *Massengale v. Svangren,* 41 Wn.2d 758, 760, 252 P.2d 317 (1953).

See, also, *Ward v. Zeugner,* 64 Wn.2d 570, 392 P.2d 811 (1964), and *Archibald v. Gossard,* 65 Wn.2d 486, 397 P.2d 851 (1965).

Further, after he becomes aware that the right of way will not be yielded, a reasonable reaction time must be allotted the favored driver to permit him, in the exercise of due care, to act. *Golub v. Mantopoli, supra,* citing *Liesey v.*

858

*Wheeler,* 60 Wn.2d 209, 373 P.2d 130 (1962), and *Bellantonio v. Warner,* 47 Wn.2d 550, 288 P.2d 459 (1955).

Therefore, while the right of way afforded the favored driver is relative, as the jury was told by instruction No. 14, it is indisputable that the primary duty to avoid collisions rests upon the disfavored driver.

In *Huber v. Hemrich Brewing Co.,* 188 Wash. 235, 62 P.2d 451 (1936), we held that it was error for the court to instruct that all rights of way are relative and the duty to avoid accidents or collisions at street intersections rests on both drivers, where such instruction was not qualified by a statement that the primary duty to avoid such collisions was on the driver to the left, *i.e.* the disfavored driver. (See, also, WPI 70.02.02.)

We are aware that the court, in instruction No. 9, did state that:

> [T]he right-of-way of the driver traveling on the arterial street, however, is not absolute, and the duty to avoid accidents at such intersections rests upon both drivers. The primary duty rests upon the driver who does not have the right-of-way.

thereby qualifying the statement of correlative duty. But no such qualification was placed on the rule stated in instruction No. 14. Instruction No. 14 was repetitive, and, if given, should have likewise contained this qualification. The giving of the instruction without so qualifying was error and should not be repeated upon retrial.

Appellant next assigns as error the giving of instruction No. 16, which provided that:

> You are instructed that a party may not invoke the doctrine of sudden emergency where that emergency is brought about, in whole or in part, by his own negligence. In other words, it applies only to a party who, at the time the peril arises, is himself operating without negligence, not to one who is then committing a wrong.

This same instruction was given and assigned as error by the appellant in *Bailey v. Carver,* 51 Wn.2d 416, 319 P.2d 821 (1957). However, appellant's contention in that case, *i.e.* that the instruction did not properly define the sudden

emergency doctrine, was not discussed since it was decided that the instruction was not within the pleadings and the evidence, and the giving of the instruction was, therefore, held to be erroneous and prejudicial.

In the present case, by instruction No. 15, the trial court informed the jury that:

> An automobile driver who, by the negligence of another and not by his own negligence, is suddenly placed in a position of peril and compelled to act instantly to avoid injury is not guilty of negligence if he makes such a choice as a reasonably prudent and careful person placed in such a position might make, even though he did not make the wisest choice.

■ This instruction alone, we feel, adequately apprised the jury of the necessary elements of the doctrine. See WPI 12.02. The giving of instruction No. 16 was unnecessary. Further, it might have been misleading. Although the first sentence of the instruction is a correct statement of the law, the second sentence, beginning with the words, "In other words," which is seemingly explanatory of the first sentence, omits any requirement that the emergency be *brought about* by the "negligence" or "wrong" being committed by the one seeking to benefit from the application of the doctrine. It is conceivable that the jury might have concluded, under the instruction, that, if appellant was exceeding the speed limit, and hence "committing a wrong," he was not entitled to the benefit of the doctrine in connection with his acts after being confronted by respondent's vehicle.

Therefore, while the giving of the instruction may not constitute reversible error, we do not deem it a desirable instruction, and it should not be given upon retrial of this case.

There remains unresolved the question of whether appellant was contributorily negligent, and, if he was, whether such contributory negligence was the proximate cause of the accident.

860

The judgment is, therefore, reversed for the reasons stated above, and the case is remanded to the trial court for a new trial.

FINLEY, C. J., HUNTER and HAMILTON, JJ., and DENNEY, J. Pro Tem., concur.